[Crim. No. 3937. In Bank.—May 25, 1936.]

THE PEOPLE, Respondent, v. WILLIAM ZIRBES, Appellant.

Ray T. Coughlin and Clifford A. Russell for Appellant.

U. S. Webb, Attorney-General, and Seibert L. Sefton, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was convicted of murder in the first degree. The jury in its verdict made no reference to the punishment which defendant was to suffer under his conviction. The court of necessity imposed upon the defendant the death sentence.

The indictment under which the defendant was tried and convicted accused him of murdering Clifford Stanley Andrus, on April 20, 1934, in the county of Sacramento. Two persons were eye-witnesses of the crime. They were Mr. and Mrs. M. W. Hedge. They were sitting in their automobile at the side of the road in North Sacramento, and saw defendant drive up in a Chevrolet car bearing license number 8H 61 67. The defendant stopped about thirty feet in front of them, and about three feet from where the deceased, Clifford Stanley Andrus, was standing. Near Andrus was a suitcase. When defendant's car stopped, Andrus went over to it and opened the door. Andrus and the defendant engaged in conversation, but the Hedges were not able to hear what was said. Just as Andrus opened the door to defendant's car, the latter shot him Andrus staggered back, and the defendant fired a second shot. He then got out of his car, put a gun back into his pocket, and went over to the suitcase, which he picked up and placed in his car. He then got back into his car and drove away. Andrus staggered over to the car where the Hedges were sitting. Mrs. Hedge asked Andrus why the defendant shot him, and the latter replied that he did not know. Mrs. Hedge took down the license number of defendant's car, and later turned the number over to the officers. Andrus was taken to the hospital where, after stating that he was dying, he said William Call shot him. Andrus died soon afterwards, and an autopsy surgeon testified that Andrus died from a gunshot wound in the chest and a hemorrhage resulting therefrom. The evidence showed that defendant had been going under the name of William Call. The Chevrolet car, bearing the license number 8H 61 67 was found three or four days later near Sierra Oaks, where it had been abandoned. Later the defendant was found in Chicago, where he was extradited and brought back to California. While returning from Chicago to California the defendant told the sheriff who accompanied him that he knew he was wanted

for murder and had left for Chicago. On his trial the defendant testified in his own behalf, and stated that he was not in North Sacramento on the day Andrus was killed, but was in Oakland. He further stated that the last day he saw his Chevrolet automobile was the day before the killing, April 19th, when it was in his yard at his home. In rebuttal it was shown the defendant bought the car on April 13, 1934. The sheriff testified that on the way from Chicago to Sacramento the defendant told him that his car was stolen from him the next day after he bought it.

No claim is made that the evidence is not sufficient to support the verdict. After the rendition of the verdict, the defendant made a motion for a new trial, which was denied. Defendant now contends that the court erred in denying his said motion. The motion was made upon the alleged misconduct of one of the jurors, and was supported by affidavits of John McVanner and Paul Milovich. These affiants stated in their affidavits that one of the jurors, Alex Gorman, had had a conversation with them during the trial of the case on the subject of the charge against the defendant. Upon the hearing of said motion for a new trial, the court called said juror, Alex Gorman, to the witness chair, and interrogated him regarding the charges made against him by McVanner and Milovich. Gorman denied that he had made any statements to either McVanner or Milovich, or that he had had any conversation with either of them during said trial. Thereupon the court denied the motion for a new trial, and instructed the district attorney to proceed against McVanner and Milovich, as it was apparent to the court they had committed perjury in their affidavits. As the motion for a new trial was denied upon conflicting evidence, the action of the trial court will not be disturbed on appeal. This rule is so well established that citation of authorities to support it is not necessary. No error was shown on the part of the trial court in denying said motion, nor in refusing to continue the hearing of said motion in order to permit the defendant to obtain affidavits of other jurors in the case upon certain collateral matters brought out in the examination of the juror, Gorman. (*People* v. *Worthington*, 105 Cal. 166, 171 [38 Pac. 689].)

It is next contended that the district attorney was guilty of misconduct (1) in criticizing the defendant for

not explaining certain facts brought out by the evidence of the prosecution, and (2) in stating to the jury in his argument "that man Zirbes is as guilty as the shades of hell". As to the contention that the district attorney erroneously criticized the defendant in not explaining certain incriminating evidence against him, we are of the opinion that the officer was well within the rule now in force under the recent amendment to article I, section 13, of the Constitution, and section 1323 of the Penal Code. Referring to the remark of the district attorney as to the manifest guilt of the defendant, statements of that character on the part of the prosecuting officers, while they are not to be commended, and should be omitted from the orderly proceedings in trials in courts of justice, are seldom if ever held to be so erroneous as to require a new trial in case of the conviction of the defendant. Especially is this so when, as in the present case, the objectionable remark was called to the attention of the court, and at the request of the defendant, the court directed the jury to disregard it.

 The court did not err in denying defendant's challenge to the panel of the jurors on account of the bias of the officer summoning the panel which would be a good ground of challenge to an individual juror. It is contended that the sheriff of the county of Sacramento was biased against the defendant by reason of his appearance as a witness on behalf of the prosecution, and that therefore all his deputies, including the deputy who summoned certain of the jurors in this case, were disqualified from acting officially in summoning the jury. Conceding the disqualification of the sheriff and that this disqualification extended to his deputies, we are not persuaded that the challenge should have been allowed. The jurors who were summoned by the deputy sheriff were summoned to complete the panel for the trial of the defendant. Their names were drawn from the regular jury box, and given to the sheriff for service. The panel thus summoned by the deputy sheriff was not therefore a special venire summoned from the body of the county to complete the panel, as provided for by section 227 of the Code of Civil Procedure. The manner of their selection and service is provided for by sections 225 and 226 of the Code of Civil Procedure. Under these sections of the code the officer merely performs the ministerial duty of informing the jurors, who

have been previously drawn in open court, of their selection as such jurors and of the time and place of the trial. No challenge to the panel would therefore lie under section 1064 of the Penal Code, relied upon by defendant, as that section of the code expressly applies only ''when the panel is formed from persons *whose names are not drawn as jurors''*. (Italics ours.) That section of the code was the decisive factor in the case of *People* v. *Le Doux*, 155 Cal. 535, 543 [102 Pac. 517], and for that reason the Le Doux case is easily distinguishable from the case now before us.

▪ The court refused to give an instruction prepared by defendant that the testimony of a police officer was to be measured by the same standards as the testimony of other witnesses in the case. This refusal defendant claims was prejudicial error entitling him to a reversal of the judgment. No authority is cited in support of this claim, and no showing is made that the appellant suffered any prejudice by reason of the failure of the court to instruct the jury as requested by appellant. The court in this case gave the usual instruction relative to the exclusive right of the jury to determine the credibility of any witness, which applied to police officers testifying in the case, as well as to all other persons appearing as witnesses. An instruction in many respects similar to the proposed instruction in this case was refused in the case of *People* v. *Kilfoil*, 27 Cal. App. 29, 36 [148 Pac. 812]. The action of the court in refusing said instruction was held not to be erroneous.

▪ The jury when it retired to deliberate upon its verdict was placed in charge of two deputy sheriffs. It is contended by appellant that the disqualification of the sheriff extended to these deputies and that, therefore, the rights of the appellant were prejudicially affected by this action of the court. Again, the appellant fails to cite any authority in support of his contention. Similar objections were raised in the cases of *People* v. *Babcock*, 160 Cal. 537, 545 [117 Pac. 549], and *People* v. *Nakis*, 184 Cal. 105, 112 [193 Pac. 92]. Practically the same situation in principle existed in those cases as was made to appear in the present action. The court held in each of these cited cases that no prejudicial error was shown, and refused to disturb the judgments. We are in perfect accord with the rule followed by the court on these two previous occasions.

■ The appellant questions the legality of the drawing of the panel from which was selected the jury before whom the appellant was tried. It is contended that the court in empanelling said jury, failed to follow certain sections of the code, namely, sections 227, 246 and 248 of the Code of Civil Procedure and section 1059 of the Penal Code. Without going into detail as to just what steps were taken by the trial court in selecting, drawing and empanelling said jury, it appears from the record before us that the panel was regularly drawn from the list of names selected and deposited in the jury box of the county of Sacramento. From the names so drawn, the jury before whom the appellant was tried was selected and empanelled by the court in open court in the presence of the defendant and counsel. The objections made to the selection of the jury are technical in the extreme, and no showing is made that the appellant was, or could have been, prejudiced in the slightest degree by the procedure followed by the court in the empanelling of said jury.

■ During the trial the appellant as part of his defense attempted to show that the deceased had been convicted of a felony for the purpose of impeaching the dying declaration of the deceased in which the deceased had stated that the appellant had shot him. As one of the links in this chain of evidence, the appellant sought to introduce a certain finger-print card for the purpose of establishing the identity of the deceased as the same person convicted of a felony in the United States District Court in the state of Arizona. The objection of the prosecution to the admission in evidence of this finger-print card was made upon the ground that the same was incompetent as there was no evidence before the court that the finger-print card bore the finger-print of the deceased. The card was produced from the state bureau of criminal identification and investigation by a Mr. Sked, an identification expert of the department who had no personal knowledge as to the person whose finger-prints the card bore. The court sustained an objection to the introduction of the card on the ground that the evidence of Mr. Sked was hearsay in so far as it purported to establish the fact that the card bore the finger-prints of the deceased. This ruling of the trial court was proper. (*People* v. *Van Cleave,* 208 Cal. 295, 300 [280 Pac. 983] ; *People* v. *Darling,* 120 Cal. App. 453 [7 Pac. (2d) 1094].)

■ The trial court gave the usual instruction that a witness wilfully false in one part of his testimony was not to be trusted in others. No objection was made to this instruction at the trial of the action, nor was any request made to the court for any change or amplification of this instruction. Appellant now claims that the court should have also instructed the jury that, "If you believe that the deceased was wilfully false in one part of his declaration he should be distrusted in other parts and in such circumstances you would be entitled to disregard and cast aside the entire declaration." It was held in the case of *People* v. *Thomson,* 145 Cal. 717, 722 [79 Pac. 435], that the refusal of the court to give such an instruction, when requested, was prejudicial error and entitled the appellant to a reversal of the judgment. In the present case, as we have shown, no request was made by appellant of the trial court that it instruct the jury as to the rule applicable to dying declarations, which he now claims it should have done. Upon this subject the District Court of Appeal in the case of *People* v. *Brown,* 71 Cal. App. 181, 190 [235 Pac. 72, 75], held as follows: "At any rate, if defendant had thought such an instruction proper in the circumstances, he should have presented it for the consideration of the trial court. This he failed to do. Even assuming that defendant is right in his contention (which we are not prepared to do), as the matter stands, such omission cannot now be allowed as prejudicial error." We are in accord with the statement of law as thus enunciated by the District Court of Appeal. This subject is also regulated by statute. (Sec. 1093, Pen. Code.)

We find no error in the record. The order denying appellant's motion for a new trial and the judgment are, and each of them is, hereby affirmed.

Thompson, J., Waste, C. J., Shenk, J., and Langdon, J., concurred.

Rehearing denied.