A jury found defendant (appellant) guilty on a trial under an indictment charging him with receiving stolen property in the first degree, as proscribed by the Alabama Criminal Code (Code of Ala. 1975, Title 13A) 13A-8-16, effective January 1, 1980, which by § 13A-8-17 is classified as a Class B felony.
According to the testimony of the owner of the automobile allegedly stolen, he parked it about noon January 16, 1980, on a downtown street in Sheffield and left the keys in the automobile. At approximately 1:15 P.M. he returned to where he had parked his automobile and discovered it was missing. He immediately reported the incident to the police. That same night, he identified the automobile at the Colbert County Jail; it had been wrecked and sustained damage to the front end.
The State's evidence consisted largely of the testimony of four witnesses, Willodean Patrick, who testified she saw appellant driving the vehicle around 4:00 P.M. the day it was reported missing; Altie Turberville, who said she saw appellant and two others walking away from the automobile; William Lee Croy, who said he saw appellant driving the automobile around 4:30 P.M. the day it was taken; and Virgie Vickers, who testified she saw appellant driving the vehicle about "dusky dark" the same day. All of this was before the automobile was located by the officers and brought to the Colbert County Jail.
After the State rested its case, defendant presented evidence by three witnesses tending to support an alibi. Thereafter, appellant took the stand and positively denied ever stealing or riding in the automobile.
The evidence showed that the other two people whom a witness for the State testified were in the automobile with defendant *Page 395 
as shown above had pleaded guilty to "stealing" the automobile.
Appellant complains of the refusal by the trial court of two charges requested in writing by defendant. They are:
 "1. That if the jury finds that the defendant without the consent of the owner of the vehicle in question took said vehicle and used it without intending to deprive the owner of it permanently you may find the defendant guilty of the unauthorized use of the vehicle.
 "2. That if the jury finds that the defendant was in possession of a stolen automobile and did not intend to permanently deprive the owner thereof of its use you may find the defendant guilty of the offense of unauthorized use of a vehicle."
Appellant says that the misdemeanor of unauthorized use of a vehicle proscribed by Alabama Criminal Code, § 13A-8-11 is a lesser included offense of larceny of a motor vehicle or receiving a stolen motor vehicle. He relies upon Moore v.State, 52 Ala. App. 394, 293 So.2d 309 (1974), in which a conviction for the misdemeanor of taking or using temporarily any animal or vehicle of another without authority as proscribed by Code of Alabama 1940, Tit. 14, § 339 was upheld in a trial on an indictment charging grand larceny of a motor vehicle. Appellant overlooks McMurphy v. State, Ala.Cr.App.,358 So.2d 1065 (1978), and authorities there cited, in which it is held that the unauthorized use of a vehicle as proscribed by § 13A-8-11 is not a lesser included offense of larceny of the vehicle. McMurphy controls, and following it we find that the court was not in error in refusing either of the charges requested. We are of the opinion that the court was not in error in refusing either of said written charges for the additional reason that there was no evidence whatever in the case that tended to prove the commission of the offense that is claimed to be a lesser included offense. In that circumstance, it has been repeatedly held that the failure of the court to instruct the jury as to a lesser included offense is not error.Harvest v. State, Ala.Cr.App., 342 So.2d 1369 (1977). Furthermore, neither charge hypothesized a belief or finding "from the evidence," which of itself justified the refusal thereof. Thompson v. State, Ala.Cr.App., 369 So.2d 50 (1979).
While Investigator Ronnie May, of the Colbert County Sheriff's Office, was testifying as a witness for the State, there were indications that he was using some notes in a file to refresh his recollection. At the end of the testimony of the witness, defense counsel moved as follows:
 "I would make a motion at this time that the defense be allowed access and the right to copy all reports, police notations, photographs, witness statements, and all documents contained in the file of Mr. Ronnie May from which he just testified from to refresh his recollection. I would move that the State let me have the right to examine this file, that there might be evidence beneficial to the defendant with which he could defend himself."
The transcript does not show or even indicate that the witness in testifying was referring to "reports, police notations, photographs, witness statements," in his file. Under the circumstances, including an indication in the transcript defendant had been given an adequate opportunity for a discovery of all discoverable material in the possession of the prosecution, the particular motion of defendant was unreasonable and properly overruled. The right of defendant to see and examine material used by a witness while on the stand to refresh his recollection is not an unbridled right but is subject to reasonable limitations. Russell v. State, Ala.Cr.App.,365 So.2d 343, 348 (1978); Cooks v. State, 50 Ala. App. 49, 276 So.2d 634, cert. denied, 290 Ala. 363, 276 So.2d 640 (1973). It appears that the target of defendant's motion was much larger than a combination of the text and context of any information used by the witness while on the stand to refresh his recollection. The motion was properly overruled.
The transcript indicates some connection between the issue we have just discussed and the issue now to be discussed, but as the parties on appeal have treated them as *Page 396 
separate and independent issues, we will do so. Appellant asserts that the trial court "committed reversible error by allowing testimony concerning an inculpatory comment to be introduced after granting Appellant's Motion to Suppress the statement and without having determined if the statement was voluntarily given." The reference is to testimony of Investigator Ronnie May as to a statement to him by defendant while he was in custody. Testimony of the witness as to the statement was admitted in evidence, over the objection of defendant, while the witness was testifying on call of the State as a rebuttal witness. Appellant is correct in saying that the testimony of the same witness as to the same statement had been suppressed on motion of defendant. That motion was presented and the ruling thereon made during the presentation of the State's case in chief. The particular testimony in rebuttal was as to an inculpatory statement of defendant offered and received in evidence in impeachment of defendant as a witness for himself. The question asked the witness, defendant's objection, the ruling of the court and the answer of the witness are in the following part of the transcript:
 "Q. Did he [defendant] make any statement to you concerning a car or wanting to see a car —
 "MR. STOLLSWORTH: Your Honor, we object to that on the grounds if for no other reason, it has been ruled upon by the Court.
 "BY THE COURT: It has been gone into and I will allow it at this time.
"MR. STOLLSWORTH: We except, Your Honor.
"BY THE COURT: Overruled.
"MR. MAY: He made a verbal statement to me, yes, sir.
 "MR. PATTON CONTINUES: Would you tell the Court and jury what he said on that occasion?
 "A. During the course of the conversation, he got up from the desk where he was sitting and walked to the window and looked out and said, `Come and show me the car ya'll got, it might not be the one I stole.'
 "Q. Did you ask him any further questions at that time?
 "A. Yes I said, what do you mean it might not be the one you stole. And at that time, he said, that's all I am going to say. I'm not going to sign anything or say anything else. I want to see my lawyer."
While defendant was testifying on direct examination, he was asked in detail about the circumstances of his arrest and of the interrogation by law enforcement authorities, including Investigator Ronnie May, in which testimony it was emphasized that notwithstanding some claimed efforts on the part of the officers to get him to make a confession, he had not done so. Among the questions of his attorney on the subject and his answers as a witness were the following:
"Q. Did you tell Mr. May you had stolen any car?
 "A. I told him I didn't know nothing about the car and I didn't know why he was questioning me on the car, because I didn't know about it."
It should be explained that the sustention of defendant's motion to suppress evidence of the extrajudicial statement made by defendant to the witness Ronnie May was not based on any conclusion of the trial court that a proper predicate for the admission of a confession or incriminating statement of an accused had not been laid. To the contrary, it appears that such a predicate had been laid but that defendant declined to make any statement, particularly a written statement, other than what he said, as quoted above, until he had a lawyer. Furthermore, the transcript shows that defendant's grounds of objection to the admission in evidence of the oral statement of defendant were:
 ". . . That the same is surprise to the defense, it is prejudicial to the defendant's rights, the only information pertaining to any statement made and the only notes of Mr. May state simply that Johnson denied any knowledge of the stolen vehicle, and that any reference to a stolen *Page 397 
vehicle as testified to by Mr. May is irrelevant to this case, prejudicial and inadmissible and we move to suppress any evidence of an alleged oral statement, both on the grounds of surprise and grounds that the defense was informed that no statements — no such statements had been made and also on the grounds of irrelevancy."
We think enough has been stated to show that under all the circumstances the mere fact that the court at one time ruled in favor of defendant's motion to suppress evidence of the statement does not constitute a valid ground for placing the trial court in error in thereafter overruling defendant's objection to the offer of the oral statement in evidence. There was not a change in the substance or nature of the ruling of the court but a change in the status of the case. Appellee agrees that the trial court was correct in its first ruling in that, as then urged by defendant, the statement was not relevant to the issue of defendant's guilt, although it would have been relevant if defendant had been charged with larceny of the motor vehicle. Appellee further argues that the statement was relevant on rebuttal to the question of the credibility of defendant as a witness and was properly shown against him in impeachment of him as a witness.
As stated above, when defendant interposed its objection to the second offer of the statement in evidence, the court said, "It has been gone into and I will allow it at this time." That it had "been gone into" by defendant is fully supported by the transcript.
We think we have said enough to show that the ruling of the court did not constitute any contravention of defendant's right not to "be compelled in any criminal case to be a witness against himself," as guaranteed by the Fifth Amendment, or his right to "the assistance of counsel" as provided by the Sixth Amendment, to the Constitution of the United States. However, any uncertainty on that subject should be removed by a consideration of the now established principle as to the admissibility of an extrajudicial inculpatory statement of an accused when offered in impeachment of him as a witness, as distinguished from its admissibility when offered by the prosecution before the accused has taken the stand as a witness. As to impeaching evidence, the test is less favorable to the accused; the statement is admissible if its "trustworthiness satisfies legal requirements" or is shown to be "free from coercive or involuntary influence," as expressed respectively in Harris v. New York, 401 U.S. 222, 224,91 S.Ct. 643, 645, 28 L.Ed.2d 1, 4 (1971) and Campbell v. State, Ala.,341 So.2d 742 (1977), aff'g Ala.Cr.App., 341 So.2d 735 (1976). In accord therewith is Walker v. State, Ala., 369 So.2d 825, rev'g Ala.Cr.App., 369 So.2d 814 (1979).
The trial court was not in error in its action as to the admission in evidence of the testimony of Investigator Ronnie May as to the statement made to him by defendant.
Officer Wesley M. Ausley of the Cherokee Police Department was permitted to testify, over the objections of defendant, that soon after 5:00 P.M., January 16, 1980, he investigated what obviously had been a collision between two motor vehicles at an intersection in Cherokee, in Colbert County, Alabama. He said one of the motor vehicles was still at the intersection at the time but that the other was not. He took some pieces of glass from near the place of the impact and thereafter compared or matched them with broken pieces of glass on the allegedly stolen and obviously damaged automobile of the instant case, and testified to the effect that the pieces of glass he had found at the scene of the collision came from said automobile. Appellant says, as he did on the trial, that such evidence was inadmissible in that it "constitutes a distinct and separate offense" from that "charged in the indictment and it is prejudicial to defendant." However criminal the conduct of the driver of the motor vehicle that had left the "scene" may or may not have been, the evidence was admissible as "a part of the res gestae" of the crime for which defendant was being tried or, stated otherwise, for the reason that the collision *Page 398 
and the crime charged were "parts of one continuous transaction or one continuous criminal occurrence." Gamble, McElroy'sAlabama Evidence, § 69.01 (3) (1977). The evidence had a material bearing on the question of the intent of the defendant in driving the automobile when seen, according to two witnesses, about half of an hour before the collision occurred. It was competent and relevant, as well as material, and was properly admitted regardless of any incidental effect tending to implicate defendant in another crime. Murphy v. State,52 Ala. App. 490, 294 So.2d 457, cert. denied, 292 Ala. 743,294 So.2d 462 (1974).
As a final insistence on a reversal, appellant urges that as applied in this case the Alabama Habitual Felony Offenders Act, Code of Ala. 1975, 1980 Cum.Supp., § 13A-5-9, is unconstitutional. The Act has been upheld as constitutional against attacks made and considered in Watson v. State, Ala.Cr.App., 392 So.2d 1274 [1980], cert. denied, Ala.,392 So.2d 1280 [1981]. Appellant attacks it as applied in this case on six separate grounds, which we will separately consider.
Appellant argues that he was denied due process as to his sentence in accordance with the Habitual Felony Offenders Act in that he was not charged in the indictment in this case with having been previously convicted of a felony. Long before the Alabama statute was enacted, the particular contention of appellant now considered was determined adversely to him.
 "Even though an habitual criminal charge does not state a separate offense, the determination of whether one is an habitual offender is `essentially independent' of the underlying substantive offense. Chandler v. Fretag, 348 U.S. 3, 8, 75 S.Ct. 1 [4], 99 L.Ed. 4, 9 (1954). Thus, although the habitual offender issue may be combined with the trial of the felony charge, `it is a distinct issue, and it may appropriately be the subject of separate determination.' Graham v. West Virginia, 224 U.S. 616, 625, 32 S.Ct. 583 [586], 56 L.Ed. 917, 921
(1912). If West Virginia chooses to handle the matter as two separate proceedings, due process does not require advance notice that the trial on the substantive offense will be followed by an habitual criminal proceeding. See Graham v. West Virginia
(U.S.) supra." Oyler v. Boles, 368 U.S. 448, 452, 82 S.Ct. 501, 503, 7 L.Ed.2d 446, 450 (1962).
Although the prescribed procedure in some states differs from that prescribed in Alabama and that approved in Oyler v. Boles, by which different procedure a defendant may properly be charged in an indictment with having been convicted of previous offenses, the same is not required in order to preserve the defendant's right to due process, as was noted in Spencer v.Texas, 385 U.S. 554, 566, 87 S.Ct. 648, 655, 17 L.Ed.2d 606,615 (1967), in which it is stated:
 "Tolerance for a spectrum of state procedures dealing with a common problem of law enforcement is especially appropriate here. The rate of recidivism is acknowledged to be high, a wide variety of methods dealing with the problem exists, and experimentation is in progress. The common-law procedure for applying recidivist statutes, used by Texas in the cases before us, which requires allegations and proof of past convictions in the current trial, is, of course, the simplest and best known procedure. Some jurisdictions deal with the recidivist issue in a totally separate proceeding, see, e.g., Oyler v. Boles, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446, and as already observed (n. 2, supra) Texas to some extent has recently changed to that course. In some States such a proceeding can be instituted even after conviction on the new substantive offense, see Ore.Rev.Stat. § 168.040 (1959); Graham v. West Virginia, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917. . . ."
The next issue presented by appellant as to his being sentenced as an habitual offender is whether "imposition of a greater sentence under the Habitual Offenders Act constitutes ex post facto treatment if his prior conviction occurred before the effective date" of the Act. The same issue was raised inWilliams v. State, Ala.Cr.App., *Page 399 393 So.2d 492 [1981], in which a pertinent prior conviction had also occurred before the effective date of the Act. We follow now what was said by Judge DeCarlo in Williams that the Act "has not been unconstitutionally applied in a retroactive manner as to make it an ex post facto law."
A third issue presented as to the Act is whether it "constitutes cruel and unusual punishment in disproportion to the crime by not providing that one adjudged to be an Habitual Offender be previously confined to the penitentiary?" Appellant cites no authority, and we find none, to the effect that the failure of the Act to require that the prior felony convictions resulted in actual imprisonment in the penitentiary, as distinguished from convictions in which execution of the sentence as to such imprisonment may have been suspended, establishes that the Act is violative of the "cruel and unusual punishments" provision of the Eighth Amendment to the Constitution of the United States. Inapplicable are authorities dealing with statutes which expressly or impliedly exclude convictions that are themselves left in suspense, that remain conditional or inchoate.
We are unable to see that punishment for a second offense can become cruel or unusual merely because one has not been punished for an offense for which he has been previously convicted. Does he not have less reason to complain than one who has suffered in full the punishment that has been imposed upon him for his previous crimes? The defendant was sentenced in this case to imprisonment for twenty years and one day, which was only one day beyond the maximum provided for the Class B felony for which he was convicted, without regard to his prior felony convictions. Code § 13A-5-6 (a)(2). It was only five years and one day beyond the minimum provided for his conviction now under review where, as here, there had been three or more previous felony convictions, and it is greatly less than the maximum of "imprisonment for life or any term not more than 99 years," as specified in § 13A-5-9 (c)(1).[1]
We find nothing in the Alabama Act,[2] nor in the application of it in the instant case that is violative of "the cruel and unusual punishment" clause of the Eighth Amendment.
Appellant's contention that the Act is unconstitutional in that it causes double jeopardy has also been disposed of adversely to him in Williams v. State, supra, wherein the following from Gryger v. Burke, 334 U.S. 728, 68 S.Ct. 1256,92 L.Ed. 1683, 1687 (1948) is quoted:
 ". . . The sentence as a . . . habitual criminal is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes. It is a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one. . . ." (Emphasis supplied)
Appellant also argues an issue as to whether the Act dealing with the subject of prior felony offenders causes or permits an unconstitutional deprivation of the right to a trial by jury. He does not support his side of the issue by authorities or by any effort to draw any distinction between the Alabama statute and the uniformly recognized rule in this jurisdiction and elsewhere that "Where the fine or period of imprisonment is fixed by law, it is usually for the court and not for the jury to assess it, unless such power is conferred on the jury by constitutional or statutory provisions, as is frequently the case where the charge is murder or an offense punishable by death." 23A C.J.S. Crim. Law, § 1141. At this time we do not endeavor to pass upon the question whether under the Alabama Act a defendant would ever be entitled to have a *Page 400 
jury determine whether he has been previously convicted for a felony or felonies, to which according to some authorities he is entitled when there is a disputed issue of a material fact as to the prior conviction or convictions, such as the identity of the defendant as the person previously convicted. See 50 C.J.S. Juries § 78a. No such disputed issue was presented in the case under review. To the contrary, while testifying on the trial, defendant affirmatively afforded proof of his previous convictions. Furthermore, duly certified copies of the previous convictions were introduced in evidence, the Clerk of the Circuit Court trying all of the cases and an assistant clerk testified as to the records, and the actual fact that defendant had been previously convicted, as charged by the State well before and at the sentencing hearing, was never challenged.
We find no error in the record prejudicial to defendant, and the judgment of the trial court should be affirmed.
The foregoing opinion was prepared by Retired Circuit Judge Leigh M. Clark, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court. The judgment of the trial court is hereby
AFFIRMED.
All the Judges concur.
[1] It appears that in fixing the punishment at a mere tissuey difference between the minimum provided by statute, the trial court considered of great importance the fact that the sentences in the previous convictions ran concurrently.
[2] No provision pertinent to this case is as severe as a provision mandating the sentence to life imprisonment upon a third conviction for a felony less than capital, which a majority held was not cruel and not unusual punishment inRummel v. Estelle, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382
(1980).