Scott Kimberly was indicted and convicted for the second degree robbery of Rosemary Murray. The trial judge granted his motion for new trial and set aside the verdict of the jury because the District Attorney did not disclose an allegedly exculpatory oral statement made by a co-defendant. The State filed a petition for writ of mandamus requesting this Court to direct the trial court to rescind and hold for naught its order granting the motion for new trial and to reinstate the verdict of the trial jury. *Page 1107 
On April 27, 1982, Kimberly filed a motion for discovery. Ground 10 (a) of that motion sought "(a)ll material known to the prosecution, . . . which is arguably exculpatory in nature or favorable to the accused or which may lead to exculpatory material, including . . . (a) Evidence that defendant may have lacked knowledge of any of the acts alleged in the indictment." The trial court granted this ground of the motion to the extent that he ordered, "Granted as to Counts . . . 10 (as to exculpatory material, as to those matters which may be favorable to Defendant, said items shall be presented to the Court for ruling by Court as to whether such material is exculpatory under Brady)."
On the hearing of the motion for new trial, Lt. Roderick Roy of the Mobile Police Department testified that he interviewed Sandra Whatley at the Tennessee State Prison for Women in an effort to obtain evidence against the Kimberly brothers, David and Scott, in the robbery of Murray's Antiques. Ms. Whatley is a co-defendant in the robbery.
During the interview, Ms. Whatley told Lt. Roy several different and conflicting stories. Roy concluded that he had not "gotten one straight answer" and "didn't even write up a report on it because it was a waste of our time and money to go up there. * * * She just told us 15 different stories. And it wasn't even worthwhile." However, Ms. Whatley did tell Lt. Roy that "she was in the Mobile area at the time of the robbery with her brother, Jay Whatley, and one David Kimberly", and that Scott Kimberly "was not in the Mobile area at the time of the robbery nor to her knowledge in the vicinity nor had she seen him for a considerable period of time." However, Ms. Whatley also told Roy that just she and David were in Mobile, and then she, David, and Scott were there, and later that it might have been she, David, and Jay. There was no written or recorded account made of this interview by Lt. Roy. Defense counsel did not learn of these statements until after trial.
Assistant District Attorney Lloyd Copeland stated to the court that he did have this information before trial but "for whatever reason was under the mistaken impression, maybe it just was because of the obvious close association between all the principals involved in this thing that Barry (defense counsel) knew about it. I was wrong." In arguing that the nondisclosure was not intentional, the prosecutor stated:
 "And as I said, I'm not going to come in here and tell you that I didn't know about it because these facts were communicated to me in a general way shortly before the trial that she had made on the one hand a statement basically of the tenor of what Barry has alleged that she was down here with Jay Whatley and David Kimberly and in the area without Scott; also, that she had made numerous contradictory statements, both contradictory within themselves and with everything else she said and had at one point even said that, I will come down and testify that they did the robbery, Scott and David."
The trial judge found that this information was never presented to him for a ruling as to whether or not it was exculpatory under Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), as he had ordered.
After arguments by the attorneys, the trial judge granted the motion for new trial:
 "THE COURT: Well, throughout the brief of the Defendant there are these words: Suppression on behalf of the State. And I believe that to be a misnomer. I don't believe that there was a suppression on behalf of the State. I think there was a nondisclosure on behalf of the State. The statements made by Miss Whatley no doubt are material. However, I doubt very, very seriously the value to the Defendant."
* * * * * *
 "I find it highly unlikely that the statements will ever be used. However, there was a request for exculpatory material. In addition to that — and I believe this *Page 1108 
takes us out of the ambit of Brady — here was a Circuit Court order directing — not making reference — directing the State if they did not produce the material to the Defendant to produce it to the Court."
* * * * * *
 "We're outside the ambit of Brady and the Constitution. Mr. Hess, I'm going to grant your motion, set aside the verdict of guilty by the jury and order a new trial."
Because it is clear from the record that the trial judge improperly granted the motion for new trial and incorrectly interpreted the constitutional requirement of due process, we grant the writ of mandamus.
Initially, we find that mandamus is proper to prevent a gross disruption in the administration of criminal justice. Here, we find the existence of exceptional circumstances amounting to a judicial usurpation of power which justify the invocation of the extraordinary remedy of mandamus. Ex parte Nice,407 So.2d 874, 878 (Ala. 1981). Here, as in Nice, it is the trial judge's reasons for granting the new trial which compels our attention.
The trial judge found that Ms. Whatley's statements are "no doubt material." However, he also found it "highly unlikely that the statements will ever be used" and "doubt[ed] very, very seriously the value to the Defendant." From the record before this Court, it is clear that the trial judge granted the motion for new trial because the State violated the circuit court's order, not because the act of nonproduction violated constitutional principles or the holding of Brady v. Maryland, supra.
Brady held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196-97. "A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial." UnitedStates v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2398,49 L.Ed.2d 342 (1976).
When the prosecutor fails to disclose evidence specifically requested by the defendant a new trial should be granted if the nondisclosure "might have affected the outcome of the trial."Agurs, 427 U.S. at 104, 96 S.Ct. at 2398. In Ex parte Watkins
[Ms. 82-1190, February 3, 1984] (Ala. 1984), our Supreme Court stated:
 "Regardless of its admissibility or its trustworthiness, however, the crucial question is the significance of the suppressed information upon the question of Watkins' guilt or innocence. Agurs, 427 U.S. at 112, n. 20 [96 S.Ct. at 2401, n. 20]. The Supreme Court, in Agurs, instructed:
 "`[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' 427 U.S. at 112-13 [96 S.Ct. at 2401-02].
 "On its face, there can be no question that this evidence, if the defendant can prove its truthfulness, would create a reasonable doubt as to the guilt or innocence of the accused, because it identifies other individuals as those who committed the robbery."
A new trial should not be granted simply because the prosecutor has failed to disclose evidence which the trial court ordered produced without a consideration of the materiality of the evidence and the effect of the evidence on the outcome of the defendant's trial. "The principle of Mooneyv. Holohan [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)] is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." *Page 1109 Brady, 373 U.S. at 87, 83 S.Ct. at 1197.
Here, it appears that the trial judge improperly granted a motion for new trial without properly considering the significance of the nondisclosed information upon the question of Kimberly's guilt or innocence. The petition for writ of mandamus is granted and the circuit court is directed to set aside its order granting the new trial.
WRIT GRANTED; ORDER ISSUED.
All Judges concur.