Appellant Weaver was indicted for the offense of burglary in the third degree and appellant Gardner was indicted for receiving stolen property in the second degree and theft of property in the third degree. This case was consolidated by agreement of the parties. Appellant Weaver was convicted and sentenced to 30 years' imprisonment and appellant Gardner was convicted of receiving stolen property in the second degree and sentenced to three years' imprisonment.
John Reams testified that he owned property on which a three-bedroom house was located. Mr. Reams apparently used the house for storage purposes. Mr. Reams testified that he had owned a motorcycle shop in Mobile. However, he testified that it had been some time since he had operated the shop as a business. He testified that on June 19, 1985, he received a telephone call from a Mr. Rosenthall, who owns Custom Motorcycle Services. Mr. Reams, at the request of Mr. Rosenthall, went to Mr. Rosenthall's shop and looked at some "material" which he had in his possession. Mr. Reams testified that the items he observed belonged to him. He stated that he had stored these items in a house on his property. He further testified that he had not been to the house for approximately a week and a half to two weeks before he received this telephone call. Mr. Rosenthall testified that the appellants came to his shop attempting to sell the merchandise. He further testified that appellant Gardner indicated that the items had belonged to her deceased husband. Mr. Rosenthall gave the appellants a $100.00 check for the merchandise and wrote down the license tag number of the appellants' car. He stated this was his customary procedure with sellers who did not have a receipt or sales slip for their merchandise. Mr. Rosenthall testified that the items were new and unused, but covered with dust. He discovered stickers on several of the items which indicated that they had been previously sold to Mr. Reams's motorcycle shop. He testified that he had known Mr. Reams for some time and therefore called him to inquire about the merchandise. Mr. Reams called the Sheriff's Department to have someone look at the items and to search his house for any evidence.
Mr. Reams testified that the appellants lived in a house approximately 50 yards from his house. He also testified that he *Page 252 
had previously left his house secured. He further testified that after talking to Mr. Rosenthall, he called the Sheriff's Department and then went to his house. He observed that the top portion of the back bedroom window had been pried down. He further testified that the grass in his yard had grown to approximately two and a half or three feet high and that there was a path beaten from his kitchen door leading to the appellants' house.
Detective Phillips of the Mobile County Sheriff's Department testified that he went to Mr. Reams's home to investigate a burglary. He testified that when he arrived at the scene, he did not observe the condition of any windows or doors because a vehicle pulled up to the house next door which matched the description of the car driven by the people who had sold the merchandise at Mr. Rosenthall's shop. Detective Phillips testified that he knew that a subject by the name of Rita Gardner had received a check for the merchandise and, when he went next door, the lady who came out identified herself as Rita Gardner. Detective Phillips further testified that he felt it was necessary to advise her of her rights and then to ask her permission to search the premises. She signed a consent form. Detective Phillips testified that appellant-Gardner admitted selling the merchandise to Mr. Rosenthall. Appellant Gardner told Detective Phillips that "a man named John" had given her all of the merchandise. Detective Phillips indicated that he wanted everything she had received from John. She produced a vacuum cleaner and a rug, which were subsequently identified as having been taken from Mr. Reams's house. Appellant Gardner informed Detective Phillips after his inquiry about the sale of the merchandise to Mr. Rosenthall that appellant Weaver had been with her at the motorcycle shop; therefore, Detective Phillips asked to speak to appellant Weaver. When Weaver walked outside, Detective Phillips advised him of his rights and asked him if he knew about a burglary at the house next door. Weaver denied any knowledge of a burglary, whereupon Mr. Reams approached the two and stated "well, if you don't know anything about it, . . . why are you wearing my shoes?" Appellant Weaver removed the shoes and threw them.
Deputy Sheriff Sloke testified that he "developed" a latent fingerprint off of an empty gun scope box in Mr. Reams's bedroom. He identified the print as coming from appellant Weaver's number nine finger, which is his left ring finger.
 ISSUES RAISED BY APPELLANT GARDNER I.
Appellant Gardner argues that the trial court erred in allowing Detective Phillips to testify as to what the co-defendants had told him while at the scene of the offense during his initial investigation, because the discovery order was allegedly violated by the State. The record indicates that during the trial, a hearing was held outside the presence of the jury concerning the alleged violation of the discovery order by the State. Although the prosecutor alleged that she did not become aware of the transcribed statement made by appellant Gardner to Detective Phillips until the morning of the trial, the trial court suppressed any evidence of the statement because the State failed to disclose this statement to the appellant in accordance with the directives of the discovery order. However, the trial court allowed testimony by Mr. Reams as to appellant Weaver's remarks concerning the sandals which he was wearing and which were determined to belong to Mr. Reams. The court also allowed testimony from Detective Phillips as to statements made by appellant Gardner indicating that she sold the parts to Mr. Rosenthall, that she had received the items from a man named John, and that he had also given her the rug and vacuum cleaner.
The discovery order states in pertinent part:
 "The District Attorney shall produce or make available to the Defendant's attorney at arraignment the following:
". . .
 "(b) All statements of the Defendant which are reduced to writing; *Page 253 
 "(c) All statements of the Defendant which are electronically recorded or taped, and any transcripts thereof;
 "(d) The substance of any oral statements made by the Defendant which are not included within (b) and (c) hereof or if the District Attorney knows of any statements or spontaneous remarks made while the Defendant is in the custody of the police or during the investigation."
During the hearing conducted by the trial court, evidence was presented that two responses to the discovery were prepared by the State and given to the defense counsel. One response indicated that appellant Gardner had stated that she sold the motorcycle parts. This response indicated that no statements had been made by appellant Weaver at that time. The other response indicated that appellant Weaver acknowledged that the sandals belonged to Mr. Reams and that he kicked them off. This response indicated that no statements had been made by appellant Gardner at that time. Thus, the only statements left in question were those elicited during the testimony of Detective Phillips indicating that appellant Gardner told him that she had obtained the parts, the vacuum cleaner, and the rug from a man named John.
"Pursuant to United States v. Bagley, 473 U.S. 667,105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), undisclosed evidence is material under the Brady rule (Brady v. Maryland, 373 U.S. 83,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)) only when it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed to the defense."Hamilton v. State, 520 So.2d 155 (Ala.Cr.App. 1986).
 "Thus, where the prosecutor fails to disclose evidence, regardless of its admissibility or its trustworthiness, the crucial question is whether the nondisclosure might have affected the outcome of the trial. State v. Kimberly, 463 So.2d 1106, 1108
(Ala.Cr.App. 1984), rev'd, Ex parte Kimberly, 463 So.2d 1109 (Ala. 1984). `[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.' United States v. Agurs, [427 U.S. 97, 112-13, 96 S.Ct. 2392, 2401-02, 49 L.Ed.2d 342, 349 (1976)]. `"The principle of Mooney v. Holohan, [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)], is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." Brady, 373 U.S. at 87, 83 S.Ct. at 1197.' State v. Kimberly, supra, at 1108-09."
Robinson v. State, 528 So.2d 343 (Ala.Cr.App. 1986).
 "`Even where there is total non disclosure of information the test is whether the use of the information at trial would have changed the result by creating a reasonable doubt where one did not otherwise exist. United States v. Agurs, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Jones v. State, 396 So.2d 140 (Ala.Cr.App. 1981). As the United States Supreme Court stated in Beck v. Washington, 369 U.S. 541, 558, 82 S.Ct. 955, 964, 8 L.Ed.2d 98
(1962):
 "`"While this Court stands ready to correct violations of constitutional rights, it also holds that it is not asking too much that the burden of showing essential unfairness be sustained by him who claims such injustice and seeks to have the result set aside, and that it be sustained not as a matter of speculation but as a demonstrable reality. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 [76 S.Ct. 965, 970, 100 L.Ed. 1331] (1956).'"
 "Raines v. State, 429 So.2d 1104 (Ala.Cr.App.), affirmed, 429 So.2d 1111 (Ala. 1982)."
Parker v. State, 482 So.2d 1336, 1340-41 (Ala.Cr.App. 1985).
In the case sub judice, the appellant has failed to show that the disclosure of this information would have altered the outcome of the trial or that she suffered any substantial prejudice therefrom. The *Page 254 
record indicates that appellant Gardner took the stand and testified that she had received the parts, the rug, and the vacuum cleaner from John, whom she later determined to be John Dees. Thus, it is clear that she was aware of the substance of the statements made to Detective Phillips and that his testimony was merely cumulative. Further, appellant Gardner was convicted of receiving stolen property and this testimony does not dispute the fact that the property was stolen, but rather it addresses who gave her the stolen property.
 II.
Appellant Gardner contends that the trial court erred in allowing the State to use her statement made to Detective Phillips for purposes of impeachment during her cross-examination. The record reflects that although appellant Gardner's transcribed statement to Detective Phillips was not allowed to be used as evidence by the prosecutor in her case in chief, the trial court allowed the statement to be used and admitted for purposes of impeachment when appellant Gardner took the stand. An extrajudicial inculpatory statement of an accused may be admissible "when offered in impeachment of him as a witness, as distinguished from its admissibility when offered by the prosecution before the accused has taken the stand as a witness." Johnson v. State, 398 So.2d 393, 397
(Ala.Cr.App. 1981). See also Ex parte Watts, 471 So.2d 505, 506
(Ala. 1985) (wherein the Alabama Supreme Court noted that "a statement not admissible in the prosecution's case-in-chief to prove the crime charged because it was obtained in violation ofMiranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694
(1966), can nevertheless be used to impeach the accused's trial testimony," citing Oregon v. Hass, 420 U.S. 714, 95 S.Ct. 1215,43 L.Ed.2d 570 (1975); Walker v. State, 369 So.2d 825 (Ala. 1979)). However, these statements may be used for impeachment purposes only if there is an affirmative showing that such statements were voluntarily made.[1] Whetstone v. State,435 So.2d 226, 227 (Ala.Cr.App. 1983); Campbell v. State,341 So.2d 742 (Ala. 1976); Johnson v. State, 398 So.2d 393 (Ala.Cr.App. 1981); Walker v. State, 369 So.2d 825 (Ala. 1979).
 "In Campbell v. State, 341 So.2d 742 (Ala. 1976), this court held inculpatory statements:
 `* * * admissible for an impeachment purpose only upon a predicate establishing that they are free from coercive or involuntary influences. The circumstances accompanying the making of the inculpatory statement will determine the extent to which this foundation must be established, e.g., a "threshold" confession may, indeed, require evidence of a different voluntary setting than an in-custody statement.'"
Walker v. State, 369 So.2d 825, 826 (Ala. 1979).
 "Viewing the voluntariness test in terms of its underlying values, then, it may be said that the objective of the test is to bar admission of those confessions (i) which are of doubtful reliability because of the practices used to obtain them; (ii) which were obtained by offensive police practices even if reliability is not in question (for example, where there is strong corroborating evidence), or (iii) which were obtained under circumstances in which the defendant's free choice was significantly impaired even if the police did not resort to offensive practices." LaFave and Israel, Criminal Procedure, Volume 1, Section 6.2 (b).
The record indicates that no voluntariness predicate was established by the prosecutor before or during the in-camera hearing in which the judge determined that the statement would be suppressed during the State's case in chief. Furthermore, no voluntariness predicate was established by the prosecutor when using the statement to impeach appellant Gardner. Moreover, appellant *Page 255 
Gardner indicated at trial that the reason that she made the statement to Detective Phillips was to get out of jail and because he threatened to have her children taken from her. After the statement had been admitted and the defense counsel had questioned appellant Gardner concerning the possibility that she was coerced, the State recalled Detective Phillips and asked him if he ever threatened to take appellant Gardner's children away. The detective responded that he did not. The prosecutor further asked if appellant Gardner appeared to be under duress, to which Detective Phillips responded that she was crying, but that she was upset because she was scared. The prosecutor failed to ask if Phillips or anyone else threatened her in any other way, or if any promises were made in order to secure the statement.[2]
The subject matter which must be addressed in order to insure that a confession is voluntary is outlined in McCormick OnEvidence (3d ed. 1984) as follows: whether under the circumstances in which the decision to confess was made, the defendant's will to resist confessing was overborne (among the factors that have been considered are youth, sex, racial status, physical injury, illness, infirmity, psychological abnormality, low educational level, little or no prior experience with the law enforcement practices and techniques, and intoxication); whether any promises or benefits were made in order to obtain a confession; whether any "deception" was involved (McCormick refers to this as "core involuntariness," that is, claims of coercion or overbearing of the will). McCormick, supra, Section 147 (b), Section 148 (c), Section 149 (d).
According to C. Gamble, McElroy's Alabama Evidence, (3d ed. 1977), "[t]he test applicable in both state and federal prosecutions is whether the confession was free and voluntary; that is, it must not have been extracted by any sort of threats or violence, nor obtained by direct or implied promises, however slight, nor by the exertion of any improper influence."Id., at Section 200.01. Furthermore,
 "[b]efore a confession may be admitted, the State must make a prima facie showing to the trial judge that it was not improperly induced. This holds true even though there is no evidence indicating that it was improperly induced. This prima facie showing may consist of a formal predicate; or of testimony to circumstances formally showing the absence of improper inducements, without the laying of a formal predicate."
Id., at Section 200.02 (2). Under the circumstances of this case, because appellant Gardner's statement was neither a spontaneous exclamation nor part of the res gestae nor an attempt to divert suspicion from herself, and because of her testimony that the officer threatened to take her children away from her, a formal predicate should have been laid. In Alabama, a formal predicate to show voluntariness is laid in the following manner:
 "A formal predicate consists of testimony, usually given by the witness by whom proof of the confession is proposed to be made, that neither he nor anyone in his presence applied any violence to the accused or made any threats or promises to him prior to his confession.
 This formal predicate method of introducing a confession is necessary in all instances when the circumstances do not affirmatively show the absence of improper inducements.
 "The predicate question, propounded to the witness offered to prove the confession, should be in about the following form:
 "`Before the defendant made the statement, did you or anyone in your presence apply any violence to defendant or make any promise or threat to him, tell him that it would be better for him to confess or make a statement, or offer him any inducement of any kind *Page 256 
in order to get him to make a statement.'"
McElroy's Alabama Evidence, § 200.02 (3).
Because the State is required to affirmatively show the inculpatory statement to be voluntary before it can be admitted, and there was no such showing in this case,[3] the trial court's determination is hereby reversed and the case is remanded as to appellant Gardner.
 ISSUES RAISED BY APPELLANT WEAVER I.
Appellant Weaver argues that his conviction "should be vacated because the State failed to produce exculpatory evidence as ordered by the trial court." Appellant Weaver refers to the statement made by appellant Gardner to Detective Phillips, stating that she had received the stolen items from a man named John and further that she knew the items were stolen from the house next door. The statement also indicates that when Mr. Rosenthall asked appellant-Gardner if she could get any more parts, she asked appellant-Weaver who responded that they could. She stated that appellant-Weaver told Mr. Rosenthall that he could bring him a motorcycle, but appellant Gardner was uncertain as to where appellant Weaver would get the motorcycle. At trial, appellant Gardner took the stand and testified on direct examination that she received the merchandise from a man named John, sold it to Mr. Rosenthall, and gave the money from the sale to John. She further testified that she did not know that the merchandise was stolen. On cross-examination by the attorney for appellant Weaver, appellant Gardner stated that appellant Weaver never gave her any merchandise from Mr. Reams's home and that none of the merchandise which she sold to Mr. Rosenthall was given to her by appellant Weaver. She also stated that appellant Weaver never talked with John and that when John gave her the merchandise, appellant Weaver was in the bed asleep.
 "The holding in Brady v. Maryland [373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)] requires disclosure only of evidence that is both favorable to the accused and `material either to guilt or punishment.' 373 U.S., at 87 [83 S.Ct., at 1197]. See also Moore v. Illinois, 408 U.S. 786, 794-795
[92 S.Ct. 2562, 2567-68, 33 L.Ed.2d 706] (1972). The Court explained in United States v. Agurs, 427 U.S. 97, 104 [96 S.Ct. 2392, 2398, 49 L.Ed.2d 342] (1976): `A fair analysis of the holding in Brady indicates that implicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial.'"
United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375,87 L.Ed.2d 481 (1985). Furthermore, the rule of Brady applies only in situations which involve "discovery after trial of information which had been known to the prosecution but unknown to the defense." United States v. Agurs, 427 U.S., at 103,96 S.Ct., at 2397. (Emphasis added.)
In the case sub judice, the subject matter of the allegedly non-disclosed statement was introduced at trial by the testimony of appellant Gardner. Moreover, the requirement of materiality has not been met by appellant Weaver. "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish `materiality' in the constitutional sense." United States v. Agurs, 427 U.S., at 109-110,96 S.Ct., at 2400. "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record." United States v. Agurs,427 U.S., at 112, 96 S.Ct., at 2402. See also Parker v. State, *Page 257 482 So.2d 1336 (Ala.Cr.App. 1985). It is clear, in the present case, that the omitted evidence, the statement made by appellant Gardner, would not have created a reasonable doubt that did not otherwise exist through Gardner's testimony at trial. There can be no doubt that the appellant had actual knowledge of appellant Gardner's favorable testimony. "Prosecutors have no duty under Brady v. Maryland . . . to disclose evidence available to the defense from another source.Fulford v. Maggio, 692 F.2d 354, 357 (5th Cir. 1982), reversed on other grounds, 462 U.S. 111, 103 S.Ct. 2261, 76 L.Ed.2d 794
(1983); United States v. Bruner, 657 F.2d 1278, 1288, (D.C. Cir. 1981); United States v. Iverson, 648 F.2d 737, 739, (D.C. Cir. 1981); United States v. Steffen, 641 F.2d 591, 594-95 (8th Cir.), cert. denied, 452 U.S. 943, 101 S.Ct. 3091,69 L.Ed.2d 959 (1981)." Hurst v. State, 469 So.2d 720, at 723 (Ala.Cr.App. 1985).
 II.
Appellant Weaver contends that the trial court erred by allowing testimony as to statements he had made in the presence of Officer Phillips and Mr. Reams concerning his wearing Mr. Reams's shoes. This issue has previously been discussed, and the record indicates that when both appellants were represented by the same counsel, discovery orders for such information were entered and the State made two responses, one of which contained this information.
 III.
Appellant Weaver argues that the trial court erred in admitting the testimony of a fingerprint expert, Officer Sloke. Sloke testified that he lifted a latent print from a box which had contained a gun scope and which was in Mr. Reams's bedroom. Officer Sloke testified that the latent print was in the same condition as when he lifted it. On voir dire examination, the defense counsel questioned Officer Sloke as to his methods of comparison between the latent fingerprint and the known fingerprints on the fingerprint card from the police department, which was identified as those of appellant Weaver. The defense counsel then objected on the grounds that Officer Sloke could not know that the "known" fingerprints were those of appellant Weaver, because he did not take those fingerprints. However, the court overruled the objection, stating that the fingerprints were on record at the police department as being those of appellant Weaver.
 "The general rule is that the identification expert must have personal knowledge of the person whose fingerprints are on the fingerprint card before that witness can testify that the card bears the fingerprints of a specific individual. People v. Zirbes, 6 Cal.2d 425, 57 P.2d 1319, 1322 (1936). Otherwise, the expert's testimony constitutes hearsay and the admission of the fingerprint card is improper. Zirbes, supra. See also State v. Seales, 245 Iowa 1074, 65 N.W.2d 448 (1954); People v. Hardnett, 45 Mich. App. 247, 206 N.W.2d 470 (1973)."
Bighames v. State, 440 So.2d 1231, 1235 (Ala.Cr.App. 1983).
Although fingerprint records may be admitted as business records, Bighames v. State, supra, the prosecutor did not qualify appellant Weaver's fingerprint card as a business record under Code of Alabama (1975), § 12-21-43. While the prosecutor responded to the defense counsel's objection concerning the fingerprint card by stating that she could "certainly bring the sheriff down here to testify as to it being records of the sheriff's department," the prosecutor never took measures to establish the fingerprint card as a business record.
However, even if the admission of the fingerprint cards was improper, that error was harmless in view of the other evidence against appellant Weaver. Alabama Rules of Appellate Procedure, Rule 45. See Bighames v. State, supra; Little v. United States,93 F.2d 401 (8th Cir. 1937), cert. denied, 303 U.S. 644,58 S.Ct. 643, 82 L.Ed. 1105 (1938); Brown v. State, 55 Ala. App. 264, 314 So.2d 717, cert. denied, 294 Ala. 241, 314 So.2d 721
(1975) (the latter two cases stand for the proposition that the *Page 258 
improper introduction of fingerprint evidence may constitute harmless error). The record indicates that appellant Gardner testified that appellant Weaver had been in Mr. Reams's house on a prior occasion when they believed that Mr. Reams's house was for sale or for rent.[4] There was evidence from Mr. Reams and Officer Phillips that a path was beaten between Mr. Reams's house and that of the appellants; appellant Weaver was discovered wearing Mr. Reams's shoes; items belonging to Mr. Reams were found in the appellants' house; and appellant Weaver was present when the stolen items were sold to Mr. Rosenthall.
AFFIRMED AS TO APPELLANT WEAVER; REVERSED AND REMANDED AS TO APPELLANT GARDNER.
All the Judges concur.
[1] "On the other hand, if the reason for a confession being inadmissible to prove guilt also establishes that the confession does not satisfy trustworthiness standards, the confession cannot be used for any criminal trial purpose, including impeachment of a defendant who testifies." McCormick,Evidence, § 162 at 436 (3d ed. 1984).
[2] Although it is error to admit a confession before the predicate is laid, the error will ordinarily be cured by subsequent proof that the confession was not improperly induced. McElroy's Alabama Evidence, § 200.02 (3) (3d ed. 1977). However, in this case, the predicate was never properly laid.
[3] We note that the State, in its brief, alleges that Detective Phillips established that appellant Gardner's statement was voluntarily made; however, the State refers to a portion of the testimony in which Detective Phillips was referring to the statements made by appellant Gardner when she walked out of her house during Officer Phillips's initial investigation of the burglary.
[4] Mr. Reams, however, testified that his house was never for rent or for sale during the period in which the appellants entered his house to look around, allegedly believing that the house was for sale or for rent.