223 So.2d 289

Ronald David SMITH

v.

STATE.

1 Div. 343.

Court of Appeals of Alabama.

May 20, 1969.

Jas. A. Johnston, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

ALMON, Judge.

Appellant was indicted by the Grand Jury of Mobile County for the offense of assault with intent to murder. He pled not guilty and not guilty by reason of insanity. The jury returned a verdict of guilty and appellant was sentenced to a term of twelve years in the State penitentiary.

The evidence, though somewhat in dispute on certain points, reveals that appellant, Richard N. Burwell and an unidentified girl arrived at the Shamrock Club on Dauphin Island Parkway in Mobile in the early hours of the morning of October 10, 1967. They entered, ordered a drink and appellant and Burwell went to the poolroom portion of the Club which was apparently to the rear. The prosecuting witness, Vance Gotcher, and another witness, Archie Albert Dean, were in the poolroom when appellant and Burwell entered. They talked, did some betting and played pool for a while.

According to the disputed testimony of one witness, Gotcher flashed a pistol several times while in the poolroom. After a while they heard a commotion out front and they all left to investigate. Upon entering the front portion of the Club, they found Richard Smyly, the bartender, and Robert Vaughan Werneth arguing. According to one witness, Smyly cursed Werneth and called him a "German Jew". Shortly thereafter, Smyly and Werneth went outside and a fight ensued.

Appellant testified that during the fight, Gotcher pulled his pistol half-way out of his pocket and said to Werneth, "Go ahead and cut him [Smyly], there is nobody going to jump in, I'll make sure of that." This testimony was disputed. Apparently, nobody was seriously hurt in the fight and, after it was over, Gotcher and Dean took Werneth home. Appellant and Smyly then went to the home of the manager of the Club and got a shotgun. Before they returned to the Club, Gotcher and Dean had returned and were inside the Club when Smyly and appellant drove up. At this point the testimony is very much in conflict. According to Gotcher, he merely walked out the front door and was shot with a shotgun by appellant in the leg without any provocation on his part. Appellant testified that Gotcher walked out

of the front door and started to draw a pistol before he shot him.

After appellant shot Gotcher, the testimony indicates that Burwell somehow gained possession of the shotgun and appellant somehow gained possession of Gotcher's pistol. Exactly how this happened is not clear. One witness testified that Smyly took Gotcher's pistol away from him after he was shot and lying on the ground and gave it to appellant. Shortly after the first shooting, Dean came out of the front door of the Club and appellant shot Dean with Gotcher's pistol.

Appellant insists that the trial court erred in admitting testimony on the second shooting, contending that the second shooting was a distinct crime not connected with the crime charged.

On this question, and on the time element involved, we quote from the transscript.

The following occurred during the questioning of State's witness Dean:

"Q. You and Vance got shot?

"A. Yes sir.

"Q. Where was Vance when he got shot?

"A. In the door, sir. He had turned to walk out, he had just left from the bar.

"Q. And did you see anyone there with any type of weapon pointed in his direction?

"A. No sir.

"Q. Did you see anyone there with a weapon?

"A. No sir.

"Q. Did you see, after you were shot, anyone with a weapon?

"A. Yes sir.

"Q. Who did you see, sir, with a weapon?

"A. This fellow right over here.

"Q. This man over here with the light blue shirt? What type of weapon was it?

"A. It was a sawed-off shotgun.

"Q. Did you go over to Mr. Vance after he was shot?

"A. Yes sir.

"Q. And where was he shot?

"A. I couldn't tell, it was in his stomach somewhere like this—when I ran up there, this boy told me, said 'You had better move, or you will get the same thing'.

"Q. All of this happened about the same time?

"A. Yes sir.

"Q. And what happened then?

"A. I turned around and ran to the telephone, and there was somebody already on the phone; this woman, I don't know who she was, but she was already on the telephone, and so the other party that she was talking to was asking a bunch of questions, and so I took the phone and told them to just get somebody out there, and they asked me who I was, my name, and I told them my name didn't matter, just get somebody out there and get them there now, that a fellow had done been shot, so I handed the phone back to her, and ran back to the door, and that's when I got shot.

"MR. JOHNSTON: I'm going to object, Judge, and move to exclude any testimony about this man.

"THE COURT: Sustained.

"Q. This all happened within just a minute or two of the time Mr. Gotcher got shot, is that right?

"A. A minute or two, yes sir.

"MR. JOHNSTON: I object to that —(Attorney and witness talking at once)

"THE COURT: I'll overrule.

"MR. JOHNSTON: We except.

"Q. When you came back to the door, what happened to you?

"A. I didn't quite make it back to the door when I was shot.

"Q. And who shot you?

"MR. JOHNSTON: Objection, getting into another area of a possible crime being committed.

"THE COURT: Overruled.

"MR. JOHNSTON: Exception.

"A. The best I could see was this fellow here, he was the only one I seen out there.

"Q. He was the only one you saw out there?

"A. That's right."

The following occurred during the questioning of appellant's witness, Burwell:

"Q. Now immediately afterwards, you took the shot gun from this man [appellant]?

"A. Yes sir.

"Q. And what did he do, if anything?

"A. Immediately after I took the shotgun away from this man, I went back to the car and got the rifle. I turned around and there was another man laying there bleeding.

"Q. What happened to the pistol in Vance Gotcher's hand?

"A. Now this was all in a period of, I would say not more than 15 seconds that the whole thing happened. It couldn't have been 20 seconds that everything happened. To the best of my knowledge what I can remember of it was that the pistol was thrown into the car."

The appellant testified as follows:

"A. I didn't see anything but Mr. Burwell on the right hand side of me, and Mr. Smyly on the other side of the car. And I got out and walked to the front of the car, and just as I got to the front, Mr. Gotcher come out the door. He didn't even get to close the door—

"Q. He came out of the door and what did he do?

"A. He stopped, froze dead still, and looked directly at me, and squatted just like this, and I said 'please don't' and throwed the gun together and shot for his knees, but he had squatted or something and it caught him a little over the knees.

"Q. What else did you do?

"A. I walked over to him and said 'Oh God, what have I done'. He said 'You shot me'.

"Q. Did he still have his gun in his hand?

"A. No, the gun was half way out, and his hands was about like that, and just as I was standing over him, he reached for the gun, and the bartender reached and said 'No you don't' and grabbed the gun, and I said 'Let me have that', and I laid the shotgun down and Mr. Burwell picked it up, and just as I was looking at him again, just like this, Dean come running out the front door, and he was grunting or hollaring, like in the Army, they groan real loud whenever they make an attack, he was grumbling that way, and I said 'Look out' and squatted and shot him right in the thigh of the leg, and he hopped off, and I told the bartender, I said 'let's get away from here before we get killed', and I told Mr. Burwell, I said 'Take this shot gun and don't let them follow us'."

■ The general rule is that in a prosecution for a particular offense evidence tending to show defendant guilty of an-

other and distinct offense, disconnected with the crime charged is inadmissible. There are a number of exceptions to this rule however, one of which involves cases in which the several offenses are all part of the res gestae. Dennison v. State, 17 Ala. App. 674, 88 So. 211; Granberry v. State, 182 Ala. 4, 62 So. 52.

We conclude that the shooting of Dean was part of the res gestae of one continuous transaction and, therefore, admissible.

Appellant argues in brief that the record does not show that he was represented by licensed and competent counsel at arraignment. The minute entry indicates otherwise; therefore, there is no merit in this argument.

Charges 6 and 7 on self defense were properly refused for two reasons: one, they were fairly and substantially covered in the learned trial judge's oral charge to the jury; and, two, there was no mention of the duty to retreat. Twitty v. State, 168 Ala. 59, 53 So. 308.

Charge 8 on self defense was covered by the trial judge's oral charge.

Charges 10 and 11 on the burden of proof and the unanimity of the jury verdict were also adequately covered by the trial judge's oral charge.

Charge 12 was properly refused because it included this phrase, " * * * No matter how strong may be the facts, if they can be reconciled with the theory that some other persons may have done the acts * * * ". This was inapplicable and would tend to mislead the jury because there was no evidence presented whatsoever to indicate that any other person shot the prosecuting witness.

For the reasons above stated, we are of the opinion that the judgment in this cause should be and the same is hereby

Affirmed.