The defendant Roy L. Bayne was convicted of assault with intent to murder in the Circuit Court of Jefferson County on September 2, 1976. On August 16, 1977, the Court of Criminal Appeals reversed and remanded the case for failure of the trial court to give a requested charge relative to assertions of counsel. On December 9, 1977, this Court granted certiorari and reversed the Court of Criminal Appeals. On October 31, 1978, the Court of Criminal Appeals affirmed the conviction without an opinion on the authority of the Supreme Court's reversal. This Court granted certiorari for the second time to review certain issues which have heretofore been unaddressed.
Both the facts recited below and the issues presented for our review have been preserved pursuant to Rule 39 (k), ARAP.
On the afternoon of July 4, 1974, Mr. Walter Wade and his wife Mildred, their daughter, Sheryl Amerson and her husband, Larry Amerson, went to an establishment called Gilbert's. Gilbert's is a fishing camp in northern Jefferson County selling fishing equipment and sundries; Gilbert's was operated by the defendant Roy Bayne. Mrs. Wade and Mrs. Amerson returned to their home in Walker County, leaving their husbands at Gilbert's. Later in the evening, Mrs. Wade and Mrs. Amerson retired, but they awoke at approximately 2:50 A.M. on July 5 to discover that their husbands had not yet returned home.
The two women went to search for their husbands. Ultimately, they came upon the defendant in the parking lot at Gilbert's. He informed them that their husbands had escorted another woman, Louise McCray, to her home. The defendant attempted to direct Mrs. Wade and Mrs. Amerson to Mrs. McCray's home, but he finally volunteered to lead them to the McCray residence after he expressed doubt as to whether they could follow his directions.
In the meantime (omitting details not pertinent for the purpose of our decision in this case), Mr. Wade had driven Mrs. McCray home in her car and Mr. Amerson followed in his car. There was testimony tending to indicate that Mrs. McCray felt too inebriated to drive home. The three of them arrived at her home at approximately 3:30 A.M. on July 5, whereupon, Mrs. McCray's daughter, Glenda Crowder, permitted them to enter the house. Mrs. Crowder, Mrs. McCray, Mr. Wade and Mr. Amerson were sitting in the living room when they apparently heard a car outside. Glenda and either Mr. Wade or Mr. Amerson stepped to the window and observed another car. At that point, Mr. Wade, Mr. Amerson and Mrs. McCray went into a bedroom, closed the door and locked it. Mrs. Crowder testified that her four year old son, Jerry, was asleep in that bedroom. She also stated that her mother told her that if anyone asked about her (Mrs. McCray), Glenda should tell them that she had not seen her.
Mrs. Wade testified that she and Mrs. Amerson followed the defendant to the McCray residence. When they arrived, the defendant showed them the house and left. Mrs. Wade went to the front door, knocked on it, and after identifying herself, was *Page 1241 
allowed to enter. It appears that Glenda opened the front door and then left the house. When Mrs. Wade came in, she proceeded to the door of the bedroom where the other three adults were hiding. She began to hit the door, attempting to gain entry. Shortly thereafter, the defendant, who had inexplicably decided to return to the McCray house, pushed Mrs. Wade aside and beat on the door with his fist and shoulder. When his efforts proved fruitless, he pulled a paper sack out of his pocket, extracted a gun from the sack and began to shoot at the door. Mrs. Wade and Mrs. Amerson left the house at this point.
It appears from the testimony that the defendant fired several shots into the door around the doorknob, and that all of these bullets passed through the door and one of the bullets struck Jerry Crowder, who had been awakened during the melee. Mr. Amerson testified that when the bedroom door was finally opened, he stated to the defendant, "You shot the baby." The defendant then turned and fired at him. The bullet struck him in the arm. Mr. Wade eventually subdued the appellant; Mrs. Crowder, Mrs. Wade and Mrs. Amerson returned and the authorities were summoned.
The defendant was charged with assault with intent to murder (AIM) in two separate indictments. One indictment was based on the shooting of Larry Amerson. The defendant was convicted of AIM of Jerry Crowder. It is this latter conviction that is the basis of this appeal.
This Court granted the defendant's second petition for certiorari to resolve two issues.
Did the trial court err in refusing to allow the defendant to show the disposition of the prior AIM prosecution?
Did the trial court err in its oral charge concerning the presumption of malice and intent inferable from the use of a deadly weapon?
The defendant contends that since the State was allowed to introduce evidence of the shooting of Larry Amerson and a subsequent criminal prosecution arising out of that shooting, it was error to refuse to allow the defendant to show that the first prosecution resulted in a conviction for assault and battery. The shooting of Amerson was properly allowed into evidence as a part of the res gestae. Smith v. State,45 Ala. App. 48, 223 So.2d 289 (1969).
Amerson was called as a witness for the State. He was asked on cross-examination about the outcome of his case. The trial court ruled that the result could not be shown. The defendant contends that after the State showed the commission of another crime the appellant should have been allowed to prove the outcome of that trial.
The defendant contends that the disposition of the prior AIM prosecution was admissible because: a conviction for assault and battery operates as an acquittal of the AIM charge as a matter of law; and alternatively, the conviction for the lesser included offense was admissible to show bias on the part of the State's witness who was the victim in the other shooting.
Defendant relies on the case of Mitchell v. State, 140 Ala. 118,37 So. 76 (1904). In that case, the defendant was being prosecuted for burning the house of H. The State introduced evidence that another house belonging to M was intentionally burned at about the same time. The State's evidence also showed that prints which were the same size as the defendant's shoes were found leading from M's house.
The court held that
 [s]uch evidence having been adduced by the state, the court should not have rejected the offer of defendant, which, according to the bill of exceptions, was "to introduce before the jury the record of the city court showing that at the last term of the city court said defendant had been tried and acquitted of burning [M's] house." The evidence so offered was admissible under the doctrine of res adjudicata. . . .
140 Ala. at 121, 37 So. at 77.
Thus, Mitchell stands for the proposition that when testimony of another crime is admitted into evidence, the defendant *Page 1242 
should be allowed to show his acquittal of that crime. Seealso, Gamble, McElroy's Alabama Evidence, § 69.02 (2) at 141 (3d ed. 1977) where it is stated that
 [w]hen evidence of a prior crime, for which the accused was prosecuted, is admitted under one of the exceptions to the general exclusionary rule, the door is open for the accused to prove his acquittal of the former crime.
The State claims that Mitchell does not apply to the present case since here, there was a conviction of assault and battery in the earlier prosecution. It is argued that only a prior acquittal may be shown, not a prior conviction.
It is clear that under Alabama law a conviction of a lesser included offense is an acquittal of the higher offense. Clarkv. State, 294 Ala. 485, 318 So.2d 805, on remand, 56 Ala. App. 67, 318 So.2d 813, writ quashed 294 Ala. 493, 318 So.2d 822,cert. denied 423 U.S. 937, 96 S.Ct. 298, 46 L.Ed.2d 270 (1974). Therefore the appellant, by being convicted of assault and battery, was acquitted of assault with intent to murder as a matter of law. This evidence should have been admitted.
Moreover, as pointed out in Brown v. State, 37 Ala. App. 595,74 So.2d 521, cert. denied, 261 Ala. 696, 74 So.2d 524 (1954):
. . . if one party inquires into a matter the other party should be allowed to go into the entire transaction and give evidence, if he can, which would tend to explain the detrimental effects of the initial proof. The justice of this doctrine cannot be denied.
37 Ala. App. at 598, 74 So.2d at 523.
The defendant also claims that the evidence of his acquittal on the AIM charge should have been admitted to show bias on Larry Amerson's part. In Wells v. State, 292 Ala. 256,292 So.2d 471 (1973), this Court observed that the range and scope of cross-examination with regard to developing the interest and bias of a witness is committed largely to the discretion of the trial court. Moreover, the trial court's rulings will not be disturbed unless it clearly appears that the defendant was prejudiced by the rulings.
In the Wells case, the defendant was involved in an argument. During the argument the defendant fired a .25-caliber pistol at his wife, and the defendant's son fired a shotgun, presumably at the defendant, in the defense of his mother and his sister. These shots resulted in the death of the defendant's wife and the wounding of his daughter.
The defendant was tried and convicted of first degree murder. At the trial, the defendant's daughter testified as a witness for the State. She was asked, apparently on cross-examination, this question:
 Q. In fact, I'll ask you this, if it isn't a fact that you instigated a prosecution against your father for assault with intent to murder on you? Isn't that a fact?
292 Ala. at 257, 292 So.2d at 472.
The trial court sustained the State's objection to that question and the Court of Criminal Appeals affirmed that ruling. This Court reversed the Court of Criminal Appeals, holding that:
. . . notwithstanding the range of cross-examination to develop bias is largely discretionary, where the witness' testimony is important to the determination of the issues being tried, there is little, if any, discretion in the trial judge to disallow cross-examination on matters which tend to indicate the bias of the witness.
 Furthermore, our rule is that the fact that a witness has been a complaining witness in another criminal action against the defendant is relevant and material to the issue of the witness' bias. (See Ala. Dig., Vol. 19A, Witnesses, 370 (3).
292 Ala. at 258, 292 So.2d at 473.
This Court remanded the case to the Court of Criminal Appeals to determine if the refusal to allow counsel for the defendant to ask that question "probably injuriously affected substantial rights" of the defendant. *Page 1243 
On remand, Wells v. State, 52 Ala. App. 356, 292 So.2d 475,cert. denied, 292 Ala. 757, 292 So.2d 476 (1974), the Court of Criminal Appeals determined that the trial court's refusing to allow the defendant to pursue this line of questioning did not prejudicially affect the defendant's rights. The Court of Criminal Appeals apparently determined, after a review of all of the facts, that the error was harmless.
Based on the examination of the record in this case, the failure of the trial court to allow the defendant to show the disposition of the prior AIM prosecution was prejudicial and therefore, reversible error. The State elicited evidence which indicated that the defendant turned and deliberately fired pistol shots at Larry Amerson. The evidence also showed that a criminal proceeding had been commenced against the defendant. Had the jury learned that this criminal proceeding resulted in a conviction, not for AIM, but for assault and battery, a lesser included offense, then the jury could have easily found that the complainant-victim in the previous case harbored some resentment toward the defendant. Moreover, the jury could have determined that this resentment colored the testimony of the witness in this case, since he was the complainant-victim in the prior prosecution.
Under these circumstances, and according to the principles set out in Wells, supra, we hold that the trial court abused its discretion in refusing to allow the counsel for the defendant to show the disposition of the first criminal prosecution for AIM.
The defendant's second contention is that the trial court committed reversible error in its charge on the presumption of malice and intent from the use of a deadly weapon. The instruction complained of is:
 Now, ladies and gentlemen, the law further states in prosecution for Assault with Intent to Murder — Rule of Mens Rea — must show both the intent and malice can be inferred from the same act of using a deadly weapon.
The defendant contends that the charge was incorrect for not adding the qualifying phrase "unless the circumstances refute the inference (or presumption) of either malice or intent."
The State asserts that the error, if any, was cured by other portions of the trial court's instructions.
Those portions of the oral charge which the State asserts cured any deficiencies are as follows:
 And malice itself is a mental state or condition of one's mind which prompts them to do an unlawful act without legal excuse or justification.
 The law says that when an assault is made with a deadly weapon in sufficient proximity to inflict a deadly wound, the law implies malice from the use of such instrument unless the attempt to kill was in self defense, or if successful would have been Murder.
 The burden is on the State to prove the ingredient of Malice and the ingredient of willfulness in this case.
 Ladies and gentlemen, in consideration of the infirmities of humanity the law regards a sudden transport of passion caused by adequate provocation as sufficient to rebut the intention of malice from the use of a deadly weapon.
 Intent is an ingredient of Assault with Intent to Murder.
 The burden is upon the State to satisfy the jury beyond a reasonable doubt from evidence that defendant assault with intent to murder. Intent being a mental purpose or state of mind is rarely, if ever, susceptible of high rate of proof. It is an inference to be drawn by the jury from the character of the assault, the use of a deadly weapon, and the other attendant circumstances involved, when the facts upon such inferences must be proved as clearly as to leave no reasonable doubt in the minds of the jury that on the occasion complained of the defendant intended to murder.
* * * * * *
 I charge you, members of the jury, if you believe from the evidence in this case that the defendant fired the shots to frighten or scare those individuals lodged *Page 1244 
at that time in the bedroom into opening the door and not with the intent to take anyone's life, then you cannot convict the defendant of assault with intent to murder as charged in the indictment.
 The facts must raise the presumption that the defendant intended to kill Jerry Wayne Crowder, and if the Jury find, that the State has failed in this, then they must acquit the defendant of an assault with intent to murder.
* * * * * *
 The Court charges the jury that if there was sufficient provocation to excite sudden passion and the defendant acted under such passion, then the result is that passion disturbed the sway of reason and made him, regardless of his act, and if the jury believe this from the evidence, they should not find the defendant guilty of assault with intent to murder.
The law is clear that in a prosecution for assault with intent to murder, both malice and intent must be shown.Tolliver v. State, 50 Ala. App. 654, 282 So.2d 92 (Ala.Cr.App. 1973); Douglas v. State, 42 Ala. App. 314, 163 So.2d 477 (1963)rev'd on other grounds, 380 U.S. 415, 85 S.Ct. 1074,13 L.Ed.2d 934 (1965). The use of a deadly weapon, under proper circumstances, gives rise to the permissible legal presumption of both malice and intent. Douglas, supra. These legal presumptions are rebuttable, however, and if the evidence which proves the offense would permit an inference that the defendant acted without the requisite intent or malice, then the rebuttable nature of these presumptions must be submitted to the jury. Anders v. State, 255 Ala. 319, 51 So.2d 711 (1951);Green v. State, 45 Ala. App. 549, 233 So.2d 243 (1970).
We have reviewed the entire oral charge, including that portion previously quoted and we do not believe that the charge, taken as a whole, makes the rebuttable nature of the presumptions of malice and intent "sufficiently explicit."Green, supra.
The entire theory of the defense was predicated on the lack of the defendant's malice and/or intent and the defense presented evidence to that effect. The trial court erred in refusing to charge the jury that the facts and circumstances of the shooting might rebut or refute the presumptions of malice and intent. See Williams v. State, 291 Ala. 505, 282 So.2d 905
(1973) (malice); Sparks v. State, 261 Ala. 2, 75 So.2d 103
(1953) (intent).
For the foregoing reasons, this case is reversed and remanded to the Court of Criminal Appeals.
REVERSED AND REMANDED.
All the Justices concur, except MADDOX, J., who concurs specially.