[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 603 
The appellant was convicted of attempted murder and was sentenced to life imprisonment without parole pursuant to the Habitual Felony Offender Act.
The record indicates that Donna Cramer had been involved in an intimate relationship with the appellant for approximately three weeks. Thereafter, she left the appellant a note indicating that she did not wish to see him any more. Donna Cramer's ex-husband, Roger Cramer, was staying with her on the night in question, but did not know the appellant. At approximately 9:30 p.m., Roger Cramer was awakened by his ex-wife, who informed him that she had heard a gunshot. He therefore walked around the house, but found nothing unusual. Donna Cramer telephoned the Sheriff's Department, while Roger Cramer went to the door and kept watch. He was armed with a shotgun that Donna Cramer kept in the house. Later, Roger Cramer heard voices on the carport and a knock at the door. He then heard "a snapping sound" and a beating on the inner door. He again got the shotgun, stating that he feared the individuals would enter the house. He then heard car doors slam and the car was driven behind the house and its lights were turned out. He heard voices in the back yard and observed two men urinating. Shortly thereafter, the car was started again, was driven down the driveway, and was turned back onto the street. Roger Cramer stated that, when the car drove by the carport, he was able to determine that it was a "four door, dark blue [vehicle with] a white vinyl top." He also determined that there were three people in the vehicle; one of the occupants had a long beard and another was "a large sized guy".
Donna Cramer again telephoned the Sheriff's Department and described the vehicle. Roger Cramer went outside with the shotgun and fired into the air, but saw no one. He walked to the carport door and opened it, in order to wait for the sheriff to arrive. The screen door was propped open with his foot, when he saw a vehicle approach, pull past the driveway and under a light. He recognized the car as the same one that had been there previously. He then observed a man leaning out from the back window on the right side of the vehicle. He heard a gunshot and was struck and knocked to the floor. He identified the appellant in court as the man he had seen emerging from the window. Donna Cramer attempted to call the Sheriff's Department again, but the telephone did not work. *Page 604 
She therefore ran to a neighbor's house in order to make the call. Shortly thereafter, a vehicle was stopped pursuant to a police radio dispatch describing the vehicle in question. The appellant was one of the passengers in the vehicle. The driver of the vehicle, Jerry Harris, testified for the State, as did the other passenger, Angela Oliver. They both testified that the appellant fired the shot that hit Roger Cramer.
 I
The appellant argues that his motion for continuance should have been granted because he was grossly prejudiced in front of the jury venire. Specifically, the record indicates that, when the case was called for trial, the appellant was not present in court. The trial court stated, "Let writ of arrest issue instanter for the defendant. Sheriff, go out and get Mr. Bates, and hold him in jail without bond." Approximately a minute or two later, the appellant entered the courtroom and the trial court informed him that his case had been called for trial. The court further told the appellant that he would be in the custody of the sheriff and to take a seat with his attorney. Thereafter, the defense counsel objected on the following grounds:
 "Judge, I don't think, in light of all that has gone on this past fifteen minutes before the jury venire, that this could be a proper and impartial jury in which to try this case. Obviously, my client was late, the court has informed the Sheriff here in front of the jury venire to put him in jail, to have no bond. And, I believe as a result of what has gone on here in open court before the jury venire, that the jury would not be impartial to my client. We would request, I guess, if there's a different jury coming in next week, we try it next week."
The trial court responded that there would not be a different jury. The court further noted that the victim was present from Virginia and that, as everyone else had been present on time, if a problem developed therefrom, it was the defendant's fault. The court further stated that "[t]he court forfeited the bond in open court as is normal and customary in this Circuit. The bond was forfeited and the Sheriff was instructed to take him in custody if and when he found him and to hold him there. Motion for continuance is denied." The trial court then asked the appellant if he was going to cause any more trouble. The appellant responded negatively. The court therefore reinstated the appellant's bond and informed the Sheriff that the appellant would not have to be kept in custody.
"It is well settled that a continuance in a criminal trial is addressed to the sound discretion of the court and [the court's ruling] will not be disturbed unless [the discretion has been] clearly abused. Young v. State, 469 So.2d 683 (Ala.Cr.App. 1985); Dawkins v. State, 455 So.2d 220 (Ala.Cr.App. 1984);Sparks v. State, 450 So.2d 188 (Ala.Cr.App. 1984)." Howard v.State, 506 So.2d 351, 352 (Ala.Cr.App. 1986). "The measure of impropriety which must be shown by an appellant to hold the court in error for denial of a motion for continuance of a criminal trial is gross abuse." Richardson v. State,476 So.2d 1247, 1248 (Ala.Cr.App. 1985). We find no gross abuse of discretion by the trial court in that the evidence fails to reveal that the jury was prejudiced against the appellant.Anderson v. State, 443 So.2d 1364, 1369 (Ala.Cr.App. 1983).
 II
The appellant argues that a statement which he allegedly made to Donna Cramer should have been suppressed, because, he says, 1) she was acting as an agent of the police; 2) noMiranda rights were previously read to the appellant; and 3) the statement was involuntary.
The record indicates that, after the appellant was arrested and imprisoned, he telephoned Donna Cramer on several occasions. She informed Investigator Joe Neighbors, of the Tallapoosa County Sheriff's Department, of the telephone calls, and he responded by saying that she should continue talking to the appellant, in hopes that he might admit to the shooting. He also told her that she should be nice to the *Page 605 
appellant, in case he got out on bond. A tap was placed by the police officials on Donna Cramer's telephone. The calls subsequently stopped and the appellant began writing her. Letters written by Donna Cramer to the appellant were also introduced into evidence. When Donna Cramer asked Investigator Neighbors what she should do about the letters, he informed her that "it would be nice if he [the appellant] would write, admitting that he done the shooting." Investigator Neighbors testified that he did not "okay" the letters written by Donna Cramer. The record further indicates that, after the appellant was released on bond, he began frequenting Donna Cramer's house. Apparently, some of Donna Cramer's neighbors observed the appellant mowing her lawn and informed Investigator Neighbors of his presence. Investigator Neighbors testified that he contacted Donna Cramer and asked if the reports were true. Cramer responded that she was following his instructions to be nice to the appellant and not to make him angry. Investigator Neighbors testified that he responded to her comment, saying, "I didn't say let him come back down there and live with you, either." On one of the afternoons during which the appellant visited Donna Cramer, after he had been indicted and arraigned, the appellant told her that he shot Roger Cramer and that he enjoyed doing it. Donna Cramer testified that she attempted to contact a "Mr. Gavin," with the district attorney's office, after the admission.
Because Donna Cramer's intent was to be nice to the appellant and gather information (for the police) concerning his role in the offense; and because the police had promoted and supported her actions, we find that Donna Cramer was acting as an agent of the police. See Bridges v. State, 516 So.2d 895, 900
(Ala.Cr.App. 1987), n. 1. However, the trial court properly allowed the statement into evidence, as it was not inadmissible under the Fourth Amendment, Fifth Amendment, Sixth Amendment, or the "due process" analysis.
The appellant's statement was not admitted into evidence in violation of his right to privacy protected by the Fourth Amendment. In Hoffa v. United States, 385 U.S. 293,87 S.Ct. 408, 17 L.Ed.2d 374 (1966), the United States Supreme Court held that, under the Fourth Amendment, no rights were violated by the failure of one of Jimmy Hoffa's cronies to disclose his role as a government informer. Hoffa made a number of incriminating statements in the presence of the informer, whom he had invited to his hotel room. The Supreme Court stated that "[n]either this Court nor any member of it has ever expressed the view that the Fourth Amendment protects a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it. Indeed, the Court unanimously rejected that very contention less than four years ago in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381,10 L.Ed.2d 462." Hoffa v. United States, 385 U.S. at 302,87 S.Ct. at 414. See also Bridges v. State, supra, at 902.
 "Our problem is not what the privacy expectations of particular defendants in particular situations may be or the extent to which they may in fact have relied on the discretion of their companions. Very probably, individual defendants neither know nor suspect that their colleagues have gone or will go to the police or are carrying recorders or transmitters. Otherwise, conversation would cease and our problem with these encounters would be nonexistent or far different from those now before us. Our problem, in terms of the principles announced in Katz [v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)], is what expectations of privacy are constitutionally 'justifiable' — what expectations the Fourth Amendment will protect in the absence of a warrant. So far, the law permits the frustration of actual expectations of privacy by permitting authorities to use the testimony of those associates who for one reason or another have determined to turn to the police, as well as by authorizing the use of informants in the manner exemplified by Hoffa in Lewis [v. U.S., 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966)]. . . . *Page 606 
 "Inescapably, one contemplating illegal activities must realize and risk that his companions may be reporting to the police. If he sufficiently doubts their trustworthiness, the association will very probably end or never materialize. But if he has no doubts, or allays them, or risks what doubt he has, the risk is his."
United States v. White, 401 U.S. 745, 75152, 91 S.Ct. 1122,1125-26, 28 L.Ed.2d 453 (1971).
The appellant's statement was also admissible under both theMiranda prong and the voluntariness prong of the Fifth Amendment. The appellant was not entitled to be informed of hisMiranda rights before making the statement to Donna Cramer, because the statement was not made as a result of custodial interrogation. "The conversation did not require Miranda
warnings, because the appellant was not in custody. Miranda v.Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)."Bridges v. State, supra, at 902. The warnings enunciated inMiranda apply only when an individual is subjected to custodial interrogation. "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona,384 U.S. at 444, 86 S.Ct. at 1612. See also Hooks v. State,534 So.2d 329, 347 (Ala.Cr.App. 1987), affirmed, 534 So.2d 371 (Ala. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 883,102 L.Ed.2d 1005 (1989). Among the factors to be considered in determining whether the defendant is in custody are the physical surroundings of the interrogation and the degree of pressure applied to detain the individual. United States v. Wauneka,770 F.2d 1434, 1438 (9th Cir. 1985). Clearly, the appellant was aware, when he made his statement in Donna Cramer's back yard, that he was not in custody and was free to go.
The appellant's statement was also voluntarily made under the Fifth Amendment. This type of "false friend" situation, "that in which by deception the defendant is made unaware that the person with whom he is conversing is a police officer or police agent, clearly does not make the defendant's statement involuntary even though he acted in the mistaken impression that this person could be trusted not to reveal it." LaFave and Israel, Criminal Procedure, Vol. 1 (1984), § 6.2(c). There was no coercive police activity which would have overborne the appellant's will and made his confession not the product of rational intellect and a free will. Townsend v. Sain,372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Cf. Ex parte McCary,528 So.2d 1133, 1134 (Ala. 1988) (wherein an affirmative misrepresentation was made to the appellant by police officers that the appellant might avoid a fictitious murder charge by confessing to the robbery). We also do not find that this case involved the type of deception condemned by the Alabama Supreme Court in Ex parte Johnson, 522 So.2d 234 (Ala. 1988). InJohnson, a police officer obtained a statement from the appellant concerning his theft of a motor vehicle under the pretext that the information was " 'strictly' for the purpose of investigation of a traffic accident." Id. at 237. No such promises were made to the appellant in the instant case. See also Ex parte Weeks, 531 So.2d 643 (Ala. 1988), cert. denied, ___ U.S. ___, 109 S.Ct. 135, 102 L.Ed.2d 108 (1988) (wherein the appellant's inculpatory statement was involuntary because the arresting officer gave the promise or hope of favorable treatment by telling the appellant that he would speak to the district attorney in his behalf).
The appellant's statement was also not introduced in violation of his right to counsel under the Sixth Amendment. Although the appellant's right to counsel had attached, as he had already been indicted and arraigned, that right was not violated, because Donna Cramer did not "deliberately elicit" the appellant's incriminating statements. In United States v.Henry, 447 U.S. 264, 270, 100 S.Ct. 2183, 2186, 65 L.Ed.2d 115
(1980), the Supreme Court found three factors to be important in determining whether a government agent "deliberately elicited" incriminating statements from the appellant. First, the agent *Page 607 
was acting under instructions as a paid informant for the government; second, the agent "was ostensibly no more than a fellow inmate" of the appellant; and third, the appellant was in custody and under indictment at the time that he was engaged in conversation by the agent. Analyzing the present case according to these factors, we conclude that Donna Cramer was not paid by the State, nor was the appellant in custody. In holding that the appellant's statements were inadmissible, the United States Supreme Court in Henry also found noteworthy the fact that the agent "was not a passive listener; rather, he had 'some conversations with [the defendant]' while he was in jail and [the appellant's] incriminatory statements were 'the product of this conversation.' " United States v. Henry,447 U.S. at 271, 100 S.Ct. at 2187.
In Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477,88 L.Ed.2d 481 (1985), the United States Supreme Court held that the appellant's Sixth Amendment right to counsel was violated by the admission of his incriminating statements made to a codefendant who was acting as undercover informant. Although the appellant had telephoned the informant and arranged for the meeting, the Court noted that the police were having the informant's telephone conversations recorded and, therefore, must have known that the meeting was for the express purpose of discussing the pending charges and planning a defense for trial. The Court held that "[b]y concealing the fact that [the informant] was an agent of the State, the police denied [the appellant] the opportunity to consult with counsel and thus denied him the assistance of counsel guaranteed by the Sixth Amendment." Maine v. Moulton, 474 U.S. at 177,106 S.Ct. at 488.
However, more recently, the United States Supreme Court has returned to the focus on whether the informant "deliberately elicited the appellant's inculpatory statement." Kuhlmann v.Wilson, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986). The Supreme Court held in Kuhlmann v. Wilson:
 "As our recent examination of this Sixth Amendment issue in Moulton makes clear, the primary concern of the Massiah [v. U.S., 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)] line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police interrogation. Since 'the Sixth Amendment is not violated whenever — by luck or happenstance — the State obtains incriminating statements from the accused after the right to counsel has attached,' 474 U.S., at 176, [106 S.Ct. at 487] citing United States v. Henry, supra, [447 U.S.] at 276[, 100 S.Ct. at 2189] (Powell, J., concurring), a defendant does not make out a violation of that right simply by showing that an informant, either through prior arrangement or voluntarily, reported his incriminating statement to the police. Rather, the defendant must demonstrate that the police and their informant took some action, beyond merely listening, that was designed deliberately to elicit incriminating remarks."
477 U.S. at 459, 106 S.Ct. at 2630. In determining that the police agent did not "deliberately elicit" the incriminating statements, the Court noted that the agent never asked the appellant any questions concerning the pending charges, but merely listened to the appellant's spontaneous and unsolicited statements. In the present case, the record indicates that the appellant's admission was not made in response to any questions by Donna Cramer, but was rather a spontaneous and unsolicited statement of guilt. Therefore, we find that the appellant's right to counsel was not violated.
Moreover, the statement was not allowed into evidence in violation of the appellant's rights to due process. InHoffa v. United States, supra, the United States Supreme Court found that the use of a government informer under similar circumstances was not "a shabby thing in any case".385 U.S. at 311, 87 S.Ct. at 418. The Court stated:
 "In the words of Judge Learned Hand, 'Courts have countenanced the use of informers from time immemorial; in cases of conspiracy, or in other cases when the crime consists of preparing for *Page 608 
another crime, it is usually necessary to rely upon them or upon accomplices because the criminals will almost certainly proceed covertly. . . .' United States v. Dennis, 183 F.2d 201, at 224 [(1950)].
 "This is not to say that a secret government informer is to the slightest degree more free from all relevant constitutional restrictions than is any other government agent. See Massiah v. United States, 377 U.S. 201 [84 S.Ct. 1199]. It is to say that the use of secret informers is not per se
unconstitutional.
 "The petitioner is quite correct in the contention that [the informer], perhaps even more than most informers, may have had motives to lie. But it does not follow that his testimony was untrue, nor does it follow that his testimony was constitutionally inadmissible. The established safeguards of the Anglo-American legal system leave the veracity of a witness to be tested by cross-examination, and the credibility of his testimony to be determined by a properly instructed jury."
Hoffa v. United States, 385 U.S. at 311, 87 S.Ct. at 418. (Emphasis in original.) In the present case, Donna Cramer's testimony might have been suspect, because of her role at the apex of the lovers' triangle; however such a determination was an issue for the jury.
 III
The appellant argues that the prosecutor violated Rule 18 of the Alabama Temporary Rules of Criminal Procedure and Brady v.Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1968), by failing to produce, until the second day of trial, a statement containing exculpatory material. The appellant also argues that the State's failure to produce the statement violated a ruling of the court granting his motion for discovery. A portion of that motion had sought the disclosure and production of "[a]ll information . . . which tends to exculpate the defendant either through an indication of his innocence or through the potential impeachment of any State witness." The appellant argues that the trial court erred in failing to sanction the prosecutor or to grant the appellant's motion for continuance made in order to secure the testimony of the witness who had made the statement.
The statement in question was made by an Eddie Harold, who stated that he gave the gun used in the shootings to Jerry Harris, the driver of the automobile, and, thus, that it was not the appellant's. The appellant argues that Eddie Harold's testimony could have been used to impeach Jerry Harris, who testified that the gun was not his, and also to impeach the driver's girl friend, Angela Oliver, who testified that she had never seen the gun before.
However, there was no reversible error for failure to disclose under Brady v. Maryland, supra, or pursuant to the pre-trial discovery order; nor did the trial court err in failing to sanction the prosecutor under Rule 18, Alabama Temporary Rules of Criminal Procedure. There was no Brady
violation, because the statement concerning who actually owned the gun was not material to the case.
 " 'Pursuant to United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), undisclosed evidence is material under the Brady
rule (Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)) only when it is reasonably probable that the outcome of the trial would have been different had the evidence been disclosed to the defense.' Hamilton v. State, 520 So.2d 155 (Ala.Cr.App. 1986).
 " 'Thus, where the prosecutor fails to disclose evidence, regardless of its admissibility or its trustworthiness, the crucial question is whether the nondisclosure might have affected the outcome of the trial. State v. Kimberly, 463 So.2d 1106, 1108
(Ala.Cr.App. 1984), rev'd, Ex parte Kimberly, 463 So.2d 1109 (Ala. 1984). "[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already *Page 609 
of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." United States v. Agurs, [427 U.S. 97, 112-13, 96 S.Ct. 2392, 2401-02, 49 L.Ed.2d 342, 349 (1976)]. " 'The principle of Mooney v. Holohan, [294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791 (1935)], is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused.' Brady, 373 U.S. at 87, 83 S.Ct. at 1197." State v. Kimberly, supra, at 1108-09.'
 Robinson v. State, 528 So.2d 343 (Ala.Cr.App. 1986)."
Gardner v. State, 530 So.2d 250, 253 (Ala.Cr.App. 1987), affirmed, Ex parte Weaver, 530 So.2d 258 (Ala. 1988).
In light of the entire record and all of the evidence presented against the appellant, we conclude that the ownership of the gun is not sufficient to raise a reasonable doubt about the appellant's guilt, nor does it create a reasonable doubt where one did not otherwise exist. United States v. Agurs,427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); Parker v. State,482 So.2d 1336, 1340 (Ala.Cr.App. 1985). "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense."United States v. Agurs, supra, 427 U.S. at 109-110,96 S.Ct. at 2400.
"Furthermore, the rule of Brady applies only in situations which involve 'discovery after trial of information which had been known to the prosecution but unknown to the defense.'United States v. Agurs, 427 U.S., at 103, 96 S.Ct., at 2397."Gardner v. State, 530 So.2d 250, 256 (Ala.Cr.App. 1987), affirmed, Ex parte Weaver, 530 So.2d 258 (Ala. 1988). (Emphasis in original.) The record indicates that the defense counsel was aware of Harold's statement on the third day of trial, which was a Friday, and that he attempted to subpoena the witness during the weekend, before the trial recommenced the following Monday.
Although the State failed to produce Harold's statement in compliance with the discovery order, the appellant has failed to show that that disclosure undermined the outcome of the trial.
 "Additionally, [the defendant] has failed to demonstrate either that he was prejudiced by the State's tardy disclosure or that timely and complete disclosure would have affected the outcome of the trial. Barrow v. State, 494 So.2d 834, 836 (Ala.Cr.App. 1986). There was no showing that any tardy disclosure or alleged suppression of evidence undermined confidence in the outcome of the trial. Mason v. City of Vestavia Hills, 518 So.2d 221, 226 (Ala.Cr.App. 1987)."
Bogan v. State, 529 So.2d 1029, 1031 (Ala.Cr.App. 1988) (in which the appellant alleged that the prosecution violated a pre-trial discovery order).
Moreover, although the appellant contends that the trial court should have sanctioned the State, sanctions are a matter for the trial court's discretion. Rule 18.5(a), Alabama Temporary Rules of Criminal Procedure.
 " 'A trial court may enter any order it "deems just under the circumstances" whenever it learns that a party has failed to comply with its discovery order. Rule 18.5(a), A.R.Cr.P. (Temp.). Although Rule 18.5(a) provides that a trial court may prohibit the noncomplying party from introducing evidence not disclosed, this is an alternative remedy and is not mandatory. "The imposition of sanctions upon noncompliance with the court's discovery order is within the sound discretion of the court." McCrory v. State, 505 So.2d 1272, 1279 (Ala.Cr.App. 1986).' "
Hiett v. State, 548 So.2d 483 (Ala.Cr.App. 1989), quotingFortenberry v. State, 545 So.2d 129 (Ala.Cr.App. 1988). See also Pettiway v. State, 539 So.2d 368 (Ala.Cr.App. 1988).
"While fundamental fairness may require a trial judge to suppress evidence the State has failed to produce in compliance with an order of discovery, generally, the remedy for non-production will be the prerogative *Page 610 
of the trial judge, whose decision will not be set aside absent clear evidence of abuse." Pettiway v. State, supra. We find no abuse by the trial court in failing to sanction the prosecution for violating the pre-trial discovery order.
 IV
The appellant argues that the prosecutor improperly commented on his failure to testify and, therefore, that the trial court erred in not granting the appellant's motion for mistrial. The appellant cites two instances during the prosecutor's closing argument in which he allegedly referred to the appellant's failure to testify. The record indicates that the following two statements were made during the State's closing argument:
 "I submit to you ladies and gentlemen of the jury, that in law school we learned some very elementary principles. One is, if you have a case that is strong on the facts, try the facts. Another is, if you have a case that is strong on the law, try the law. And, the final thing is, if you have a case that is not strong on either the facts or the law, do as [defense counsel] did, and try anything that you can. And, that's what has been done in this case. Donna Cramer has been tried, Roger Cramer has been tried, I guess I have been tried. Joe Neighbors has been tried. The experts from Montgomery have been tried. But, has there been any evidence from the defense that this defendant didn't do it?
 "And, we do not have to prove, the State does not have to prove motive in the case. But who is the only person in the courtroom, or the only person who's testified in this case, that had a motive to shoot Roger Cramer? The only person that had a motive is George Bates."
After each of these comments, defense counsel made a motion for mistrial. After the first comment, defense counsel objected on the basis that the prosecution's comment constituted a reference to the defendant's failure to testify. After the second comments, defense counsel objected, stating, "[t]he prosecutor said the defendant testified as to his motive. He did not testify in this case. I believe this is prejudicial to the defendant and I move for a mistrial." This second objection seems to be based on the proposition that the prosecutor's argument concerned facts not in evidence; however, in any case, neither comment by the prosecutor constituted an improper reference to the defendant's failure to testify. The first comment made by the prosecutor concerned the nature of the defense presented by the appellant, and the second comment concerned the prosecutor's conclusion, drawn from the evidence presented, that the appellant had a motive to shoot Roger Cramer.
"In a case in which there has been only an indirect reference to a defendant's failure to testify, in order for the comment to constitute reversible error, there must be a virtual identification of the defendant as the person who did not become a witness." Ex parte Williams, 461 So.2d 852, 854 (Ala. 1984), citing Ex parte Yarber, 375 So.2d 1231, 1234 (Ala. 1979). In the instant case, not only was there no "virtual identification" of the appellant as the individual who did not testify, but the comments cannot reasonably be construed as referring to the appellant's failure to testify. The first comment was not a reference to the appellant's failure to testify, but rather a statement concerning the appellant's defense. " '[R]ather than emphasizing the defendant's silence, [this statement] merely points out his defense and inferentially called on the jury not to believe it.' " Kimblev. State, 545 So.2d 228 (Ala.Cr.App. 1989), quoting Brinks v.State, 500 So.2d 1311, 1315 (Ala.Cr.App. 1986). The second comment focused on the proof of motive and "was neither a direct nor an indirect comment on the appellant's failure to testify." Kimble v. State, supra.
 V
The appellant argues that the trial court erred in failing to charge the jury on attempted manslaughter pursuant to his written requested charge. *Page 611 
Following the trial court's oral charge to the jury, defense counsel made the following objection:
 "The defense takes exception to the court giving the charge on aiding and abetting, and the court's failure to give defendant's written charges as submitted to the court previously, as they state a correct principle of law."
According to Rule 14; Alabama Temporary Rules of Criminal Procedure:
 "No party may assign as error the court's giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete or otherwise improper oral charge, unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
The appellant failed to state the matter to which he objected and the grounds of his objection. In order to preserve an alleged omission in the trial court's oral charge to the jury, the appellant must "state with particularity the ground of" his objection. Matkins v. State, 497 So.2d 201, 203 (Ala. 1986). Therefore, the trial court's refusal to give the written requested charge on attempted manslaughter is not properly before this court. See Daugherty v. State, 527 So.2d 1364
(Ala.Cr.App. 1988).
 VI
The appellant argues that the facts as presented by the State do not sustain his conviction of attempted murder. Specifically, the appellant argues that the evidence produced by the State failed to prove that he intended to kill Roger Cramer.
"In Alabama, a person commits the crime of attempt to murder if he intends to cause the death of another person and does any overt act towards the commission of that intent." Chaney v.State, 417 So.2d 625, 626 (Ala.Cr.App. 1982). "Intent to kill can be inferred from the character of the assault, use of a deadly weapon and other [attendant] circumstances." Fordham v.State, 513 So.2d 31, 34 (Ala.Cr.App. 1986), and cases cited therein. "However, this evidence must be sufficient to allow the jury to conclude, by fair inference, that the appellant was shooting at the person (named in the indictment) in particular with the intent to murder him." Free v. State, 455 So.2d 137,148 (Ala.Cr.App. 1984). The presumption of intent raised by the use of a deadly weapon is rebuttable and "the rebuttable nature of these presumptions must be submitted to the jury." Ex parteBayne, 375 So.2d 1239, 1244 (Ala. 1979).
In the present case, the State presented evidence that, while Roger Cramer was standing in the doorway, the appellant was leaning out of the back window on the right side of the vehicle, armed with a gun, and shot the appellant. This evidence was sufficient to present a jury question on the issue of intent and, further, from this evidence, the jury could have reasonably concluded that the appellant intended to murder Roger Cramer. Cumbo v. State, 368 So.2d 871, 874 (Ala.Cr.App. 1978), writ denied, 368 So.2d 877 (Ala. 1979); Dolvin v. State,391 So.2d 133, 137 (Ala. 1980). The evidence presented by the State sufficiently supported the appellant's conviction of attempted murder.
AFFIRMED.
All Judges concur.